BELL BELAIR, as Administratrix, etc., of HARRY BAKER, Deceased, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

Third Department, March 4, 1925.

State — claim for death of claimant's intestate — intestate's automobile ran into hole in State highway, and as result intestate was killed — " patrol system " mentioned in Highway Law, § 176, as it existed at time of accident in 1918, refers to any system adopted by State Commissioner of Highways under Highway Law, § 170 — Highway Law, § 176, gives cause of action for injuries suffered by any person from defects in State highways maintained by patrol system where defects arise out of fault in administering system — claimant was killed on July 14, 1918 — first patrolman for highway was appointed June 1, 1918, and resigned June 6, 1918, before he patrolled highway, and no other patrolman was appointed before accident — highway not maintained by patrol system — State is not liable.

The words " patrol system " contained in section 176 of the Highway Law, as that section existed in 1918, refer to any system adopted by the State Commissioner of Highways, under section 170 of the Highway Law, to the end that the State and county highways may be " under constant observation and be effectively and economically preserved, maintained and repaired."

Section 176 of the Highway Law gives a cause of action for damages suffered by any person from defects in State and county highways maintained by the State by the patrol system, but the negligence relied upon must be negligence in respect to the cause or continuance of the defects, and moreover the defects must be in a State or a county highway actually maintained by means of the patrol system, and must in some way, as to their causation or continuance, be referable to a fault in administering the patrol system which has actually been inaugurated on a particular highway.

The claimant cannot recover for the death of her intestate, since it appears that he was killed on July 14, 1918, as the result of his automobile running into a hole in the State highway; that the road in question was constructed about seven years before the accident and until June 1, 1918, it had not been under the patrol system; that on June 1, 1918, the first patrolman was appointed, who resigned on June 6, 1918, before he actually patrolled the highway; that no other patrolman was appointed for that highway prior to the accident; and that in the spring of 1918 the highway in question was in a very bad condition and was so badly damaged that from early in April until after the day of the accident several gangs of men were at work making repairs, so that at the time of the accident and prior thereto the system actually being employed for the repair of the road was a system other than the patrol system.

Furthermore, the defect in the road, on which the accident arose, existed long prior to the appointment of any patrolman, and it was, therefore, as to its causation or its continuance, in no way attributable to negligence in the maintenance of the patrol, even if such a system had actually been inaugurated and was being actually administered at the time of the accident.

McCANN, J., dissents, with opinion.

APPEAL by the defendant, The State of New York, from a judgment of the Court of Claims in favor of the plaintiff, entered in the

office of the clerk of said court on the 19th day of November, 1923.

*Carl Sherman, Attorney-General* [*Clifford Couch* of counsel], for the appellant.

*Miller & Matterson* [*Wordsworth B. Matterson* of counsel], for the respondent.

H. T. KELLOGG, J.:

The claimant's son-in-law, Harry Baker, on July 14, 1918, was a passenger in an automobile which was being driven upon an improved State highway which extended between the villages of Canton and Potsdam, St. Lawrence county, a distance of about ten miles. The highway consisted of two parts, one designated by the Department of Highways as highway No. 5115, and the other as highway No. 5032. The former led out of Canton for five miles, and the latter led into Potsdam for about the same distance. The car in which Baker was traveling had passed over road No. 5115, and was on road No. 5032. The driver turned to his right on to the dirt shoulder of the road to pass an approaching car coming up a grade. According to the testimony of the driver, when he had turned back onto the macadam, one of the rear wheels of the car dropped into a hole, causing it to swerve, so that the driver lost control of the steering device. The car ran diagonally across the road and off into the ditch on the other side with the result that Baker was thrown from the car and killed. According to the same witness the hole into which the car dropped was from eight to ten inches deep, seven inches wide, and from twelve to fourteen feet long. The testimony of the driver was amply corroborated, and the Court of Claims found for the claimant upon the facts. The vital question upon this appeal is whether or not the law, applied to the facts as found, permitted the making of an award to the claimant.

It was provided in section 176 of the Highway Law, as that section read in the year 1918, as follows: " The State shall not be liable for damages suffered by any person from defects in State and county highways, except such highways as are maintained by the State by the patrol system, but the liability for such damages shall otherwise remain as now provided by law, notwithstanding the construction or improvement and maintenance of such highways by the State under this chapter." The Highway Law (§ 176) as originally enacted, provided for State immunity in words identical with the words above quoted, with the exception that the words " except such highways as are maintained by the State by the patrol system " were not embodied therein. (Laws of 1908, chap.

330, § 176.) Thus immunity of the State in reference to all accidents upon State and county highways was absolute. The burden of maintaining and repairing State and county highways was then cast, as it ever since has been, upon the State. (Laws of 1908, chap. 330, § 170.) Consequently, a traveler receiving an injury because of a defect in a State or county highway was without a remedy against the State, the town or any public officer. (*Ferguson* v. *Town of Lewisboro*, 213 N. Y. 141.) The clause " except such highways as are maintained by the State by the patrol system " was introduced into section 176 by chapter 570 of the Laws of 1910, and was intended in part to furnish a remedy in a situation where all remedies were lacking. From that time, down to the date of the accident, the first sentence of section 176 continued to read as in the provision first above quoted.

The Highway Law originally empowered the Highway Commission, among other things, " to provide for a system of patrol of such highways, or adopt such other system as may seem expedient, so that each section of such highways shall be under constant observation, and be effectively and economically preserved, maintained and repaired." (Laws of 1908, chap. 330, § 170.) Neither the phrase " system of patrol," nor the word " patrol " elsewhere appeared in any part of the law. In the year 1910, as above noted, the phrase " patrol system " was introduced into section 176. In the year 1911 there was added to section 170 the following: " The State Superintendent of Highways shall appoint the patrolmen, subject to the approval of the Commission." (Laws of 1911, chap. 646.) In the year 1913 the provision so added was withdrawn, and the phrase " system of patrol " disappeared from the section. (Laws of 1913, chap. 80.) The section was, by that act, made to read " The Commissioner of Highways shall also have the power to adopt such system as may seem expedient so that each section of such highways shall be under constant observation, and be effectively and economically preserved, maintained and repaired." The elimination of the phrase " system of patrol " seems to have been due to legislative recognition of the fact that a system of " constant observation " does not differ from, but is identical with, a patrol system. The Legislature, however, did not remove the words " patrol system " from section 176, or substitute other words therefor. Section 170 continued to read as above quoted until after the year 1918. The words, " the patrol system " continued to appear in section 176 until 1922, but were otherwise absent from the law. (See Laws of 1916, chap. 578, and Laws of 1922, chap. 371, amdg. said §§ 170, 176.) These words, therefore. as they appear in the clause " except such highways as

are maintained by the State by the patrol system," contained in the quoted provision from section 176, can be understood only by a reference to the provisions of section 170. Undoubtedly, the " patrol system " of section 176 is any system adopted by the Commissioner under section 170, to the end that State and county highways may be " under constant observation and be effectively and economically preserved, maintained and repaired."

That the State is not liable for the torts of its agents and servants, except through the consent of its Legislature expressed in a statute imposing liability and permitting suit, was long ago settled. (*Lewis* v. *State*, 96 N. Y. 71; *Smith* v. *State*, 227 id. 405; *Sherlock* v. *State*, 198 App. Div. 494; 202 id. 771; affd., 235 N. Y. 515.) It was unnecessary, therefore, for the Legislature to provide by statute for State immunity in case of accidents upon State or county highways. The clause in the quoted provision of section 176 of the Highway Law, therefore, which reads " except such highways as are maintained by the State by the patrol system " must be regarded, not as an exception to a statutory prohibition, but as an affirmative grant sanctioning causes of action which could not otherwise arise. It is clear that the causes of action sanctioned must be those, and those only, which are within the express terms of the grant, or its clear implications, since from no other source does there come to a litigant any right or any remedy against the State. Thus, section 176 provides a cause of action " for damages suffered by any person from defects in State and county highways," and does not otherwise provide one. No person, therefore, can have a cause of action unless his damages are directly attributable to " defects " in the highways named. The negligence relied upon must be negligence in respect to the cause or continuance of the " defects." Failure to give warning of a defect is not such negligence. Moreover, the defects must be in State or county highways actually " maintained " by means of " the patrol system." As we have seen, that system must be one whereby the highway in question has been " under constant observation " in order that it might be " effectively and economically preserved, maintained and repaired." That other systems of maintenance of State and county highways might be adopted by the Commission is shown by section 170. That is recognized by section 176, since in that section a form of words was employed whereby all actions because of defects in State and county highways " except " those " maintained by the State by the patrol system " are barred. Moreover, it would seem to me that the " defects " which furnish the cause of action must in some way, as to their causation or their continuance, be

14

referable to a fault in administering a " patrol system " or system of " constant observation " which has actually been inaugurated. It remains to determine whether the claimant has a cause of action within the terms of the statute as thus construed.

Highway No. 5032, as well as highway No. 5115, was constructed in the year 1911 or thereabouts. It was, therefore, about seven years old when the accident occurred. It does not appear that the patrol system had been adopted for either of these highways prior to the year 1918, the year of the accident. In January of that year the Division Engineer in charge made a map of the highways and forwarded the same to the State Commission of Highways. He had marked the map with certain symbols indicating that they were to be patrolled. On June 1, 1918, the State Commission first appointed a patrolman for highway No. 5032. On June 6, 1918, the patrolman resigned, and no patrolman was appointed to take his place until after July 14, 1918, the day of the accident. It does not appear that the patrolman appointed, who held his place for six days only, ever actually patrolled the highway or that a patrol by him, notwithstanding his appointment, was ever ordered by the Commission. It does not appear, therefore, that highway No. 5032 was ever at any time a highway " maintained by the State by the patrol system." Moreover, in the spring of 1918 these highways had, throughout long stretches, been heaved and cracked by thaws and frosts. They had been so damaged that from early in April until after the day of the accident three gangs of men, with ten in a gang, under orders from the Highway Commission, were at work in making repairs upon them. It thus appears that the system *actually* being employed for the repair of the roads was, at the time of the accident, and at all times prior thereto, a system other than the " patrol system." Furthermore, it appears that the particular defect in the road, from which the accident arose, existed long prior to the appointment of any patrolman. It was, therefore, as to its cause or its continuance, in no wise attributable to negligence in the maintenance of a patrol, even if such a system of maintenance had actually been inaugurated and was being actually administered. For these reasons we think the claimant failed to make out a cause of action.

The judgment should be reversed and the claim dismissed, with costs.

VAN KIRK, J.:

Whether or not a system of constant observation had been adopted I think the judgment should be reversed. The injury here was due to a defect in the surface of this highway. The State,

though it has assumed to repair it, is not a guarantor of its safety. The defect here came into existence before the State assumed the duty to repair, and the State is not liable unless there has been negligence in remedying the defect. The adoption of the system of constant observation was not until January, 1918. Putting such a system in operation cannot be instant and winter conditions in St. Lawrence county prevent repairs to the surface of the road until spring when the snow and ice have gone. It is a matter of common knowledge that April is as early as such work can be done, and a reasonable diligence in caring for this road must be measured in the light of the immense extent of highway to be cared for. This highway was constructed in 1911. During the years until 1918 the surface had been heaved and broken; the frost goes deep in St. Lawrence county, especially under the highways where the driveway is beaten hard. Beginning in April the Commissioner had been performing his duty with diligence; negligence in respect to repairs could not reasonably be charged against him. There is no sense of justice or right in selecting one hole in a highway, the surface of which is broken for several miles, and conclude that, because within a specified time, he had not repaired this particular hole, he is guilty of negligence. In order to reach this conclusion it is necessary to conclude that he must have employed so many men on this particular piece of highway, out of the hundreds of miles of highway under his care in the State, to make immediate repairs of every defect. To me this is an absurd conclusion and requires the Commissioner of Highways and the State to be insurers against accidents due to defects in highways immediately after it has adopted a system of constant observation. I think the trier of the facts was not justified by the evidence in finding that the existence of the defect on the day of the accident was due to the negligence of the Commissioner of Highways, or of those whom he had directed to repair this highway

All concur, except McCann, J., dissenting, with an opinion.

McCann, J. (dissenting):

I believe that the maintenance of this highway was under the control of the State. The statute does not provide for any formality in connection with the adoption of the so-called " patrol system." In this case it appears that in January, 1918, the Division Engineer having in charge the highways in question filed a map with the State Commission upon which were designated certain portions of the public highways which were to be patrolled, and on June first of the same year a patrolman was appointed. This was an affirmative act on the part of the State declaring an assumption of

the responsibility for the care and maintenance of the highways to which such appointment related. It was at least *prima facie* proof that the patrol system had been adopted. The patrolman in question resigned after six days and no one was appointed to take his place until about two months thereafter. In the meantime the accident occurred. The mere fact that the patrolman first appointed did not perform any duties did not relieve the State from the responsibility which it had assumed by the adoption of the patrol system. No patrolman by the mere act of resignation could change the highway system of the State or shift the responsibility for the maintenance of any highway, over which his appointment extended, otherwise a vacancy for a single day would leave a situation where no responsibility could be charged against any municipality. The law does not require the State Highway Commission to go through the formality of establishing a patrol system when each patrolman is appointed. The system continues without regard to who may be the appointee.

In *Borden* v. *State of New York* (113 Misc. 232, 237) the Court of Claims in a somewhat similar case used this language: "A highway placed under the patrol system is under it at all times, notwithstanding that the Highway Department, in administering the system, considers proper, adequate and complete maintenance for the year may be accomplished during the working months and excluding winter."

I am not content with the conclusion reached by the majority of the court on the question of what liability is assumed by the State under the patrol system, so called. In the prevailing opinion it is stated that " the ' defects ' which furnish the cause of action must in some way, as to their causation or their continuance, be referable to a fault in administering a ' patrol system ' or system of ' constant observation ' which has actually been inaugurated."

In my opinion the assumption of the control and maintenance of the highway carries with it the obligation to place it and keep it in repair. It is true that if serious defects existed at the time of the creation of the State liability, that would be a matter to be taken into consideration on the question of negligence on the part of the State in restoring the highway to a safe condition. I do not believe that it can be said as a matter of law that the State cannot be held liable for any existing defects. Its liability extends to its negligence in remedying such defects, and the solution of this problem would be at all times a question of fact, which in this case, has been passed upon by the Court of Claims.

I favor an affirmance of the judgment.

Judgment reversed on the law and claim dismissed, with costs.