PHILIP ELANSKY, Claimant, v. THE STATE OF NEW YORK, Defendant.
(Claim No. 18603.)

RAE ELANSKY, Claimant, v. THE STATE OF NEW YORK, Defendant.
(Claim No. 18604.)

PHILIP ELANSKY, Claimant, v. THE STATE OF NEW YORK, Defendant.
(Claim No. 18605.)

Court of Claims, December 26, 1928.

*Andrew J. Nellis*, for the claimant.

*Albert Ottinger, Attorney-General [Jonathan D. Wilson, Jr., Deputy Assistant Attorney-General*, of counsel], for the State of New York.

BARRETT, J.   These three claims arose out of an accident on the State highway known as Bullville State Highway No. 8166, about a mile north of Bloomingburg, in the county of Orange, on September 18, 1927, when the claimant Philip Elansky drove his automobile through the rail of a temporary bridge and into a creek below, resulting in injuries to himself and wife.

The claim of the wife, Rae Elansky, was tried and the evidence therein stipulated to be made part of the record in the other cases so far as applicable.

The claimants and the mother of claimant Philip Elansky left Schenectady about eleven o'clock P. M. September 17, 1927, to go to Philadelphia.   With a few stops on the way they traveled during the night and reached the scene of the accident about five-thirty A. M. (daylight saving time).

On August 31, 1927, a bridge on this highway crossing a creek was undermined and washed away and on September 8, 1927, the construction of a temporary bridge to permit traffic on the road was completed.   The highway at this point was of concrete construction and sixteen feet wide.   Approaching the old bridge, in

the direction in which claimants were traveling, the highway had an incline of a little over seven per cent. The temporary bridge was built alongside of and north of the place where the old bridge had been. It was about fifty feet long, constructed of planks laid upon timbers with railings at both sides between three and four feet high and was built about level with the concrete road and about eight or ten feet above the water. The concrete highway was connected with this temporary bridge by a temporary road constructed of a dirt and gravel fill leading from the concrete road to the bridge at an angle of about thirty-three degrees and about fifty feet long. The temporary bridge itself was constructed at an angle of about twenty degrees to the main highway and leading from the other end of the bridge was a temporary road made of dirt and gravel fill to the concrete pavement.

The driver of the car claims that while driving during the night he had experienced foggy weather at times; that as he was driving down the incline and toward the bridge he suddenly saw ahead of him a red light; that he applied his brakes, turned to the right, saw the temporary bridge and drove on it about eight or ten feet and then through the railing on the right-hand or north side of the bridge and into the creek. He claims a fog was so thick that he could not see more than ten or fifteen feet ahead and it is apparent from the testimony of other witnesses that there was a dense fog at that place at the time of the accident.

Claimants contend that the temporary bridge and railings were not safely constructed in view of the conditions and that the State had neglected to properly warn traffic of those conditions.

At the village of Montgomery, seven miles distant and through which village claimants had traveled, was a sign thirty feet by eighteen feet in size, located on a right angle turn and facing the driver proceeding in the direction in which the claimants were traveling. Upon this sign were the words, " Temporary Bridge West of Bullville Max. Cap. 6 ton, N. Y. State Highway." About six hundred feet easterly from the bridge and on the north, or right side approaching the bridge and about two and one-half feet from the edge of the concrete pavement was a sign of the same size standing about four and one-half feet from the ground, and having on it in letters from one inch to five inches high the following: " Drive Slow Temporary Bridge 500 ft. ahead, Max. Cap. 6 ton, N. Y. State Highway."

In front of the gap in the concrete highway made by the destruction of the old bridge and facing the claimants as they traveled toward the bridge, was a barricade of barrels filled with stone and a wooden railing two feet by eight inches, and suspended in

front were three red lanterns strung in a row, at least one of which was on the temporary bridge, and a torch was on the roadway, all lighted at the time of the accident. The temporary roadway leading from the main highway to the temporary bridge was protected by a guard rail of steel cable strung between concrete posts. The highway approaching the bridge was straight for a considerable distance and under normal conditions, objects at the bridge were clearly discernible at a distance of 500 feet.

The State is not an insurer of the safety of its highways under all conditions. It can only be held to reasonable care in their construction and maintenance. (*Reuther* v. *State*, 126 Misc. 773.)

It is apparent that the State had furnished ample protection to a careful driver. It had erected signs along the road. It had blocked the passage where the old bridge had existed. It had furnished a roadway to the temporary bridge with guard railings and constructed a bridge with railings on both sides, all of which objects were in sight at a distance of 500 feet in the daytime and were observable at night by the rays of the headlights of an automobile. In addition it confronted a careful driver with three red lanterns and a torch to inform him of the conditions.

It is true that claimants were driving in a thick fog, but the State does not assume any insurance liability to travelers on the highway attempting to proceed through a fog. When the necessary precautions are provided for those using the road under ordinary conditions in the night time, exclusive of fog, the State has done all that it is required to do. (*Johnson* v. *State*, 104 Misc. 395.)

The temporary bridge was constructed at a slight angle to the highway but it was sixteen feet wide and afforded ample room for the driver to have turned his car when on the bridge in accordance with the angle of the bridge. One of the red lights, as before stated, was on the temporary bridge and as a matter of fact the driver saw the temporary bridge as he turned to the right after seeing the red light. I am satisfied that the State used proper care in the construction and maintenance of the temporary bridge.

The State is not bound to exercise extraordinary care to guard against unusual accidents. To impose such a duty upon the State would be to create a liability beyond the rule of ordinary care. (*Roberts* v. *Town of Eaton*, 238 N. Y. 420.)

The claim should be dismissed.

PARSONS, J., concurs.