ALICE V. MILLER and Another, as Executors of the Last Will and Testament of RANDOLPH H. MILLER, Deceased, Claimants, *v.* THE STATE OF NEW YORK, Defendant.

Claim No. 19615.

Court of Claims, August 27, 1930.

*Lusk, Buck, Ames & Coon*, for the claimants.

*Hamilton Ward, Attorney-General [L. A. Walker, Assistant Attorney-General*, of counsel], for the State of New York.

BARRETT, P. J. The State highway running from Esperance to Duanesburg in Schenectady county, in this State, was in November, 1929, being reconstructed and repaired under a contract with J. H. McAllister. The construction was of concrete thirty feet wide consisting of three strips or panels each ten feet wide, except where the roadway narrowed to go under an underpass.

While under construction, pursuant to the terms of the contract, the road, which runs in an easterly and westerly direction, was kept open for traffic. Esperance was on the westerly end and near Duanesburg was a railroad underpass where the highway ran under the railroad tracks. This underpass had concrete abutments at its sides and crossed the road at an angle so that the abutment on the northwest side was eighty-two feet east of the abutment on the southwest side. While the center panel of the highway at the underpass was ten feet wide, the south panel at the southwest corner of the abutment narrowed to seven and eight-tenths feet and the north panel at the northwest abutment narrowed to eight and five-tenths feet and at a distance of about one hundred feet the highway narrowed from thirty to twenty-six and three-tenths feet.

The center panel under the underpass was the last to be laid. It consisted of a strip about two hundred and seventy-five feet long and extended westerly of the southwest abutment of the underpass about sixty-eight feet. It was laid between twenty and twenty-two days prior to November 15, 1929. When it was laid it was covered with hay from six to eight inches to a foot high to protect the concrete, and stones were placed along each side of the hay about four or five feet apart. Also, iron forms were laid across this strip about twenty feet apart.

From the evidence it appears that the hay projected from the center panel to the other panels and that the iron pieces were worked out of place so that three or four of them were in the hay at the west end of the strip laying diagonally with the road. On the easterly end of the strip two barrels had been placed and also a so-called flare, burning kerosene oil. On the westerly end of the strip was also a flare with two pieces of wood about six inches square to protect it from the wind. These flares according to the

testimony will blow out in strong wind and there was a strong wind on the night in question.

Claimants' testate was driving his automobile easterly over this highway from Esperance to Duanesburg on November 15, 1929, and reached the underpass at about seven-fifteen or seven-thirty P. M. He was driving with the left wheels of his car on the center panel of the road and the right wheels on the south panel at a speed of between twenty and thirty miles an hour. As he came near the underpass, the portion of the road on his side clear for passage was a strip from five to five and one-half feet wide. As he reached the place in the highway where the center panel was so obstructed, his car struck one or more of the obstructions described, causing it to turn to the right and travel a distance of about sixty feet when its front side struck the westerly side of the southwest abutment of the underpass and he suffered injuries from which in a short time he died.

There was a sign at Esperance, some five miles or more from the scene of the accident, indicating that the road was under construction and the only other sign between Esperance and the scene of the accident was an optional detour sign about three miles easterly of the beginning of the road.

From Esperance to the underpass, a distance of something over five miles, the highway was a completed, concrete, much-traveled road, and the flares, if lighted, could have been clearly seen from the west in full view about sixteen hundred feet west of the underpass.

The conditions described of this highway at the underpass made it a dangerous place for traffic. The duty rested on the State to exercise reasonable care and caution in protecting travelers against accidents caused by this dangerous condition.

That the road was being reconstructed and repaired by a contractor did not relieve the State of that duty. (*Turner* v. *City of Newburgh*, 109 N. Y. 301.)

There were several methods by which the State's obligation could be fulfilled. Sufficient and proper signs could have been placed; barriers might have been erected, or the place properly lighted. None of these precautions were taken. No barrier had been erected or sufficient signs placed and the preponderance of evidence is to the effect that while the flares had been lighted earlier in the evening the strong wind had extinguished them before the accident occurred. There was nothing, therefore, that warned claimants' testate that the road ahead of him was obstructed or that it was in a dangerous condition for travel, and the State, therefore, failed to perform its duty.

Section 176 of the Highway Law (as amd. by Laws of 1922, chap. 371) reads as follows:

" § 176. Liability of state for damages. The state shall not be liable for damages suffered by any person from defects in state and county highways, except between the first day of May and the fifteenth day of November on such highways as are maintained by the state under such system as the commissioner of highways may adopt pursuant to section one hundred and seventy, but the liability for such damages shall otherwise remain as now provided by law, notwithstanding the construction or improvement and maintenance of such highways by the state under this chapter;  *  *  *."

As the accident happened on November 15, 1929, the State contends that under the section quoted it is not liable for the damages suffered. This question we deem unnecessary to decide because we think that the law governing this claim is found in section 12-a of the Court of Claims Act (as added by Laws of 1929, chap. 467), which became effective September 1, 1929, and which reads as follows:

" § 12-a. The state hereby waives its immunity from liability for the torts of its officers and employees and consents to have its liability for such torts determined in accordance with the same rules of law as apply to an action in the supreme court against an individual or a corporation, and the state hereby assumes liability for such acts, and jurisdiction is hereby conferred upon the court of claims to hear and determine all claims against the state to recover damages for injuries to property or for personal injury caused by the misfeasance or negligence of the officers or employees of the state while acting as such officer or employee.  *  *  *  * "

The statutes quoted might seem to be in conflict. If that were true, it would be the duty of this court under well-established principles to construe them, if possible, so that both might stand and force and effect be given to each.

In our judgment such a construction can and should be given. Section 176 of the Highway Law refers to claims for damages caused by defects in State and county highways and such damages must be suffered between May first and November fifteenth, or the State is not liable. Section 12-a of the Court of Claims Act concerns claims for damages for injuries to person or property by reason of the misfeasance or negligence of officers and employees of the State. In other words, if the damages are caused by a defect in a highway, as distinguished from the negligence of the State's officers or employees, the State is not responsible between November fifteenth and May first because it had not assumed that responsibility.

However, if the damages are suffered by reason of the misfeasance or neglect of State officers or employees, the State has waived its immunity in said section 12-a of the Court of Claims Act whether such damages were sustained on a highway, or otherwise, and at any time.

It may be claimed that it is difficult to draw such a line of distinction and that usually defects in highways are the results of negligence. Of course, that difficulty may arise but each case must depend upon its own facts and the distinction has been made. For instance, in *Minshell* v. *State of New York* (123 Misc. 177) it was held that the presence of a State truck on a highway was not a defect within the meaning of section 176 of the Highway Law. It can, of course, be easily conceived that such a truck left standing in the highway might have been the negligent act of a State employee.

Again in *Belair* v. *State of New York* (212 App. Div. 206, 207; affd., 241 N. Y. 552) it was held that the failure to give warning of a defect is not a defect within the meaning of the section quoted. Also it is possible that a structural defect in the highway might not be the result of the negligent act of a State officer or employee or of his misfeasance.

In the instant case it was, to repeat, the duty of the State through its officers and employees when the highway was left open for traffic and was being used for traffic to take reasonable means to protect that traffic. This, as pointed out before, the State did not do and we are satisfied that the damages for which this claim is brought are not, therefore, the result of a defect in the highway under section 176 of the Highway Law, but were the result of the negligence of State employees under section 12-a of the Court of Claims Act and for which damages the State has expressly waived its immunity from liability.

We are not impressed with the contention of the State that the negligence was that of the contractor and not an employee of the State. The State had its engineer on the work and he had complete authority to see to it that proper warnings were given and the failure to give such warning was his negligence.

As there is no proof in the case upon which it could be found that claimants' testate was negligent, it follows that claimants are entitled to an award.

POTTER, J., concurs.