BELVA VANDE WALKER, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

(Claim No. 24193.)

WILLARD SCAMMELL, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

(Claim No. 24195.)

GEORGE A. EARL, JR., Respondent, *v.* THE STATE OF NEW YORK, Appellant.

(Claim No. 24196.)

Fourth Department, December 23, 1937.

*John J. Bennett, Jr., Attorney-General [Leon M. Layden, Second Assistant Attorney-General, of counsel; Joseph I. Butler, Assistant Attorney-General, with him on the brief], for the appellant.*

*Olmsted, Van Bergen & Preston [A. Lee Olmsted of counsel], for the respondents.*

CUNNINGHAM, J. An automobile owned and driven by George A. Earl, Jr., collided with one owned by Willard Scammell and driven by his son, Floyd Scammell, at a railroad underpass on a State highway at seven-thirty P. M. on October 5, 1935. Belva Vande Walker was riding with Scammell. She has recovered for the personal injuries sustained by her in the collision. Awards have been made to Earl and Scammell for the damage to their automobiles. The State has appealed.

The claimant George A. Earl, Jr., was driving easterly on State highway route 20. A mist was falling and the surface of the roadway was damp. The highway runs through an underpass under the tracks of the Delaware, Lackawanna and Western railroad, about a mile and one-half east of the village of La Fayette. There is a hill leading down to the underpass and commencing about one-fourth of a mile westerly thereof. The roadway is twenty feet wide. The roadway at the curve immediately west of the underpass is banked, the outside edge being fifteen to eighteen inches higher than the inside. The roadway is twenty-one and three-tenths feet wide at the middle of the curve and twenty-four feet wide in the underpass.

When Earl had gone down the hill and rounded the curve, he could see the abutments of the underpass at a point about one hundred feet distant therefrom. At this point he noticed the Scammell car coming from the opposite direction toward the underpass. Earl did not know whether the roadway in the underpass was wide enough to permit the two cars to pass so he applied his brakes and attempted to stop. His car skidded and got out of control and ran across the road and into the Scammell car.

The ground of negligence upon which the claimants base their claims is that the agents and employees of the State failed to erect and maintain suitable warning signs visible both by day and night on a steep hill, sharp curve and underpass. At the time of the accident there was a sign at the top of the hill six hundred and forty-seven feet from the underpass on the side of the road on which Earl was traveling, and seven feet eight inches from the southerly edge of the roadway. This sign stated "Warning — Curve." There was also a sign four hundred and ninety-eight feet, four inches west of the underpass and seven feet, two inches from the side edge of the road. This sign had on it the words "Caution — Sharp

Curve — Narrow Underpass." The abutment walls were painted white and were visible at night to a driver approaching from the west at about one hundred feet from the underpass. Earl said that he did not see the curve and caution warning signs; that he did not have a double windshield wiper and that consequently he could not see through the right-hand side of the windshield which was covered with moisture from the mist.

In its opinion the Court of Claims held that the State was liable because it failed to place a reflector sign or signs at the beginning of the sharp curve and the deep cut approaching the underpass, and that the absence thereof was negligence on the part of the State.

The head lights of a motor vehicle must give sufficient side illumination to reveal a substantial object ten feet from the side of the vehicle. (Vehicle and Traffic Law, § 15, subd. 3.) Therefore, the curve and caution warning signs being less than ten feet from the roadway, would be visible under ordinary conditions to the operator of an automobile approaching from the west at night.

The State had erected signs sufficient to warn persons operating automobiles over this road in the night time that there were curves and an underpass ahead at this point. Such signs were observable in the night time under ordinary conditions. Therefore, the State may not be held to be negligent because signs of a different type were not erected. (*Elansky* v. *State of New York*, 133 Misc. 331; affd., 226 App. Div. 713.)

The Court of Claims has found that the absence of reflector signs was the proximate cause of the accident.

Earl testified that at the top of the hill he noticed that the road was going down grade; that there was a curve and that he could not see beyond the turn of the curve. He was traveling twenty-five to thirty miles an hour and slowed down to a certain extent. He saw the curve before he started down the hill. It then became his duty to slow down. (Vehicle and Traffic Law, § 67, subd. 1.) This statutory requirement was intended to direct the driver of a motor vehicle approaching a curve at which he could not see the road ahead beyond the turn, to bring his car under such control that he would be prepared to stop if danger suddenly confronted him when he rounded the curve. (*Herbert* v. *Smith Paper Corp.*, 243 App. Div. 260.)

Earl did not need any highway traffic sign to warn him that there was a curve ahead and that he could not see the roadway beyond the turn of the curve. He observed that as he was about to start down the hill. If there had been a reflector sign at the top of the hill it is not probable that he would have heeded its warning to use caution any more than he did the command of the statute to do so.

The roadway through the underpass was wider than the roadway on which Earl was traveling. It was not necessary for him to attempt to stop when he saw the on-coming car as the roadway was of sufficient width in the underpass to permit two cars proceeding in opposite directions to get clearance and pass in safety.

The immediate cause of the accident was the skidding of Earl's car. There was not any causal connection between the skidding and the absence of reflector signs, and the absence thereof was not a contributory cause of the accident.

The findings that reflector signs should have been erected by the State and that the absence thereof was the proximate cause of the accident; that the State and its employees were negligent and that such negligence was the proximate cause of the accident, are contrary to and against the weight of the evidence. (*Shaft* v. *State of New York*, 239 App. Div. 144; affd., 264 N. Y. 625; *Berges* v. *State of New York*, 245 App. Div. 792.)

Each judgment should be reversed upon the law and the facts, with costs, and each claim dismissed.

In Vande Walker action: All concur, except LEWIS, J., who dissents and votes for affirmance in an opinion. Present — SEARS, P. J., EDGCOMB, LEWIS, CUNNINGHAM and TAYLOR, JJ.

In Scammell action: All concur, except LEWIS, J., who dissents and votes for affirmance in an opinion. Present — SEARS, P. J., EDGCOMB, LEWIS, CUNNINGHAM and TAYLOR, JJ.

In Earl action: All concur, except LEWIS, J., who dissents and votes for affirmance in an opinion. Present — SEARS, P. J., EDGCOMB, LEWIS, CUNNINGHAM and TAYLOR, JJ.

LEWIS, J. (dissenting). I cannot agree with the decision about to be made. When the State's liability for negligence of its agents is proved by rules of law applicable to individuals it may now respond in damages. (Court of Claims Act, § 12-a; *Jackson* v. *State of New York*, 261 N. Y. 134, 138.) When its negligence involves a failure by its properly delegated employees to exercise reasonable care to protect the users of State highways at points where danger is reasonably to be foreseen, the State's liability follows if the injury complained of is the proximate consequence of such neglect of duty. It has been said by this court that " For the protection of the persons and property of users of the highways, the duty rests upon the State to erect and maintain suitable signs or barriers along or near State highways — and upon bridges over canals — of such a character and at such points as the various circumstances presented reasonably demand. [Citing cases.] For

a violation of such duty the State is responsible as is an individual or corporation. (*Cotriss* v. *State of New York*, 223 App. Div. 520, 523. See, also, *Ross* v. *State of New York*, 265 N. Y. 632; *Johnson* v. *State of New York*, 186 App. Div. 389; affd., 227 N. Y. 610; *Sporberg* v. *State of New York*, 226 App. Div. 113; *Miller* v. *State of New York*, 231 id. 363.)

It will be conceded, I believe, under the proof now before us, that the approach from the west to the highway underpass where this accident occurred was dangerous. There a railroad right of way, which extends north and south along the length of a steep hillside and well above a parallel valley to the east, passes over State Highway Route 20. As this highway comes from the west to the brow of the hill above the railroad, it avoids a steep descent which a continuing course directly east would encounter, by turning to the south near the top of the incline and following a straight, gradual descent down the hillside for several hundred feet to a point where by a sharp curve to the east it leads through an earthen cut directly to the underpass. As the driver of an east-bound car descends the straight stretch of road down the hillside, he gains no view of the underpass toward which he is moving until he enters the sharp curve to the east which leads into it. His view of the depressed curve and the underpass is cut off by intervening earth embankments. In other words, the risks which flow from driving down an eight per cent grade, around a sharp curve and into an underpass which is visible only at short range coalesced to create an unusual traffic hazard — a condition from which danger might have been reasonably foreseen.

. Did the State perform its legal duty to warn the claimant Earl of such danger as he proceeded in the nighttime down the straight stretch of road toward the sharp turn to the east and the underpass beyond?

Concededly there were two signs, one of which was erected six hundred and forty-seven feet west of the underpass and seven feet eight inches from the edge of the roadway. This sign was not what is variously termed a " reflector," " self-illuminating," or " button " type. It was the standard cast-iron sign with white background and black letters on which were printed the highway road number " 20 " and " Warning — Curve " with an arrow pointing to the east-bound driver's left. A second sign was erected four hundred and ninety-eight feet four inches west of the underpass and seven feet two inches from the edge of the roadway. This second sign was not of the reflector type. It was four feet square with white background and black letters which read " Caution — Sharp Curve — Narrow Underpass." It is also undisputed that for a distance of nearly five

hundred feet down the road from the second sign to the underpass there was no sign of any kind — no sign facing east-bound traffic at the bottom of the straight stretch of road warning of the sharp left turn and the underpass just beyond. The State claims that at the entrance to the underpass and five feet west of its westerly abutment it had erected and maintained a reflector type of sign reading " Slow " but there is ample proof to support the findings by the Court of Claims that during the summer months just prior to the accident " there were several accidents where east-bound cars were wrecked at the underpass, some of the cars knocking down the ' Slow ' sign;" that about three weeks before the accident " an east-bound car ran into the southerly bridge abutment, where the ' Slow ' sign was located and broke the sign and bent it over in such a position that it did not reflect the lights of approaching cars;" and " that such sign was not repaired, and remained out of working order until the evening of " the accident; " that the broken condition of such sign was known to the State's highway patrolman; that on the evening of Thursday, October 3, 1935 [two nights before the accident involved in these claims], two cars were wrecked in separate accidents at this underpass, and one of these cars hit and broke the ' Slow ' sign so that the sign was separated from the post and the beads were knocked out of the sign and scattered around upon the shoulder of the road; that the condition of this sign became known to said patrolman on October 4, 1935; that between the evening of October 3, 1935, and the evening of October 5, 1935, [the date of the accident] the ' Slow ' sign near the bridge abutment remained in a broken condition and was not re-erected or restored."

It is my conclusion that there is sufficient proof in the record from which the fact finders may have determined under conditions which prevailed at the point of the accident, that the two non-reflector signs erected at distances of six hundred and forty-seven feet and four hundred and ninety-eight feet, four inches west of the underpass were not adequate to warn a night driver of the danger lying ahead.

Believing that the State owes to night drivers upon a State highway the same duty which it owes to those who drive by day and having in mind the record proof which bears upon the risks which the claimant Earl, an east-bound driver, faced at the site of this accident, I cannot agree with the conclusion reached by my associates that the decision of the Court of Claims is contrary to and against the weight of evidence wherein it finds as a fact that the State and its employees were negligent and that such negligence was the proximate cause of the accident.

In Vande Walker action: Judgment reversed on the law and the facts, with costs, and judgment granted in favor of the defendant, dismissing the claim. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.

In the Scammell action : Same decision and like cause of action as in companion case last above.

In Earl action: Same decision and like cause of action as in companion case last above.