SALLY GOODMAN et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 30626.)

Court of Claims, December 4, 1952.

*Mortimer Goodman* for claimants.

*Nathaniel L. Goldstein, Attorney-General* (*Joseph A. Drago* of counsel), and *Addison Keeler* and *Clayton Axtell* for defendant.

GORMAN, J. On the evening of September 11, 1950, at approximately 11:30 P.M., the claimant Harry Goodman, accompanied by his wife, the claimant Sally Goodman, was proceeding from New York City to Elmira, New York, in a 1940 Chrysler two-door sedan, owned by the company for which Mr. Goodman worked. As the Goodman car traveled in a generally westerly direction on New York State Route 17, it approached a wooden barricade in the highway near Lowman, New York. As it was raining very hard, the claimant left his car to examine the barricade, finding thereon a sign containing the word " DETOUR " and an arrow pointing to the right. Claimant, following this direction, found himself on a dirt surface for about ten to twenty feet before making a turn onto a hard surface which continued for about two and one-half miles. He then encountered a short dirt section similar to the previous one, necessitating a right turn onto a two-lane concrete highway, twenty-four feet wide, which was to be the east bound strip of an arterial highway, and which, at that time, was accommodating both west and east bound traffic. Claimant proceeded along this concrete highway, and had reached a point nearly four miles east of Elmira, New York, when his right front wheel skidded to the right and left the paved portion of the road. The claimant tried to straighten the car and return to the highway, but it continued to skid, regained the pavement, turned around, went onto the east bound lane and over the south shoulder and down an embankment, coming to rest with its back against a tree, part way down the embankment.

In the general vicinity of the claimants' accident, Route 17 was being reconstructed and relocated under a contract, with the

Potter DeWitt Corporation, which embraced the ultimate construction of a four-lane divided highway, each strip consisting of two twelve-feet concrete lanes, separated by a mall. Each strip was constructed with a transverse crown of approximately three inches for drainage purposes, and at the place of the accident, about Station 161, the road was straight from a point about 500 feet east thereof, and descended westward on a .4% grade. The shoulder to the south of the east bound strip was fourteen feet wide. Beyond the shoulder, the terrain flattened out on a gradual slope to the south, dropping about one to one and one-half inches to the foot, for a distance of approximately thirty feet. After this forty-five feet of gradual decline, the ground dropped down to railroad tracks and the Chemung River.

Starting at the east end of the construction project, there was a series of barricades and warning signs, denoting that the road was under construction for a distance of seven miles and directing motorists to proceed with caution. All of these signs were in place and were illuminated by flares at the time of the accident. Along the south shoulder of the east bound strip, near the scene of the accident, a series of two-inch posts, four feet in height, the tops of which were covered with a ten-inch strip of red reflectorizing material, delineated the south shoulder of the road.

Although the claimant, Harry Goodman, testified that the " DETOUR " sign which he left his car to examine was the only sign of which he was aware as he traveled along the highway prior to his accident, he was fully cognizant of the fact that the highway was under construction. As he stated: " it was very evident that something was going on, some kind of construction work ". Although it was raining hard at the time of the accident, and had been raining steadily for about five hours, claimant was driving with his lights on high beam, and was able to observe both edges of the concrete strip upon which he was driving.

The superintendent in charge of the construction project, Clarence Cudebec, testified that it was raining at about 5:30 P.M. on September 11, 1950, when he left the work for the day. The pavement was wet and the shoulders muddy, but there were no water pockets on the mall, the shoulders were draining, water was draining off the highway in all places, and there were no accumulations of mud on the highway. Mr. Cudebec drove over the highway, in the vicinity of the accident, about 2:00 A.M. on the morning following, and found that the signs were in place and illuminated by flares. He examined the road in the vicinity of the accident and observed what appeared to be

muddy tire tracks thereon, but found no accumulation of mud on the highway at the scene of the accident.

The State of New York is under a duty to maintain its highways in a reasonably safe condition for travel at all times. (*Doulin* v. *State of New York,* 277 N. Y. 558.) This duty exists whether the road is a completed one, fully open for travel, or is one under construction or repair. (*Miller* v. *State of New York,* 137 Misc. 768, affd. 231 App. Div. 363.) The State has been charged with responsibility for erecting adequate barriers and guards at places of danger. (*Sanders* v. *State of New York,* 191 Misc. 248, affd. 274 App. Div. 842, affd. 298 N. Y. 850; *Garrow* v. *State of New York,* 268 App. Div. 534.) Adequate and properly placed signs must be maintained to warn motorists of conditions which might imperil their safety. (*Barna* v. *State of New York,* 267 App. Div. 261, affd. 293 N. Y. 877; *Ziehm* v. *State of New York,* 270 App. Div. 876.) The State, however, is not an insurer of the safety of those who use its highways. (*Elansky* v. *State of New York,* 133 Misc. 331; *Worden* v. *State of New York,* 134 Misc. 848.) It can, at most, be held to a duty of reasonable care against foreseeable dangers. Under the circumstances of this case, we believe that the State fulfilled this duty. It was well within its rights in providing for the reconstruction and improvement of Route 17. Adequate signs, barriers and devices had been utilized to apprise travelers that this portion of the highway, for a distance of seven miles, was under construction, and that if they chose to use it, they should do so with requisite caution. The portion of the road over which claimants were traveling was straight and essentially level for at least 500 feet east of the accident site, and it was an open highway, in the country. The bank which the Goodman car eventually descended was approximately fifty-six feet south of the lane on which it was traveling. We do not believe, under the present circumstances, that reasonable care embraced the foreseeability of a car leaving the highway at that point. '' There was no such unusual danger or foreseeable hazard at the point involved to suggest that a guardrail was necessary for the reasonable protection for travel generally.'' (*Jacobs* v. *State of New York,* 276 App. Div 452, 454.) The highway was being constructed according to good engineering practice, and we find no negligence or defection of duty on the part of the State of New York which caused or contributed to this accident. The claims are accordingly dismissed.

The foregoing constitutes the written and signed decision of the court. (Civ. Prac. Act, § 440.)