Russell GL Hunt, J.
These claims are by husband and wife who seek to recover damages for personal injuries and property damage suffered by them as the result of an accident while riding in their automobile on July 6, 1953, at about 6:00 p.m., on State highway Route No. 9 just south of the City of Plattsburgh, Clinton County. They were on their way to their home in Brooklyn after a trip to Canada. They allege that due to the negligence of the State a depression existed in the highway which caused Mr. Seide to lose control of his car with the result that it left the highway and ran into and knocked down a wooden pole carrying telephone cables. It is not claimed, however, that the State actually caused the condition.
The highway was being widened and resurfaced pursuant to a reconstruction contract which the State had awarded to the Torrington Construction Company, Inc., an independent contractor. The contractor was required, under the contract, to provide for the maintenance and protection of traffic, subject to the direction and approval of the State engineer in charge. In addition, the contractor agreed to indemnify the State against damages and judgments arising out of the doing of the work, however caused. Any negligence of the independent contractor is not a responsibility of the State (Froelich v. City of New York, 199 N. Y. 466; Smyth v. City of New York, 203 N. Y. 106).
The claimants’ theory is that the contractor created and was responsible for a dangerous condition which caused the accident and that the State is liable, too, because it failed to perform its governmental duty of providing a highway which was reasonably safe for travel. The dangerous condition com *373 plained of was the existence of the depression which, it is alleged, had various depths up to eight inches, of which warning was not given, and, allegedly, was consequent upon the failure to properly back-fill an excavation across the highway and to maintain it up to the level of the adjoining pavement. The theory is well supported in the law. The State does have the undelegable governmental duty to maintain its highways in a reasonably safe condition and while it may require a highway under reconstruction to be kept open for traffic and impose upon the contractor the requirement to protect highway users from dangers, it cannot thereby shed its responsibility. For a failure on the part of the contractor, the State can be held liable if its failure to perform its duty of inspection and supervision and correction of negligent conditions is a proximate cause of injuries to others (Turner v. City of Newburgh, 109 N. Y. 301; Miller v. State of New York, 137 Misc. 768, affd. 231 App. Div. 363; Neddo v. State of New York, 194 Misc. 379, affd. 275 App. Div. 492, affd. 300 N. Y. 533; Battistoni v. State of New York, 1 A D 2d 926; Dunn v. State of New York, 52 N. Y. S. 2d 128). Where the contractor is the ‘ ‘ ‘ active ’ agent of the danger ’ ’, the State would be entitled to indemnity (Fletcher v. County of Broome, 286 App. Div. 286, 288; Campigno v. McQuide, 286 App. Div. 660; Di Prizzio v. Raymond Concrete Pile Co., 1 A D 2d 723). The State would not be a joint tort-feasor with the contractor (Fletcher v. County of Broome, supra).
The work under the contract started in April, 1953 and at that time the contractor placed near the south city line a large sign warning of the construction work under way southerly thereof and motorists were advised to proceed slowly and with caution. At a point about 1,186 feet south of the city line the contractor had made a 20-foot-wide cut across the existing highway for the installation of an underground culvert. This was completed about May 27, 1953, and the cut was back-filled with gravel, and, it was then honed and rolled with a mechanical roller level with the existing pavement. From time to time, and, as the fill settled, it was rehoned, additional fill was added and it was again rolled to the existing grade. This temporary pavement, if well constructed, was not a nuisance and would not be ‘ ‘ required to equal in safety and convenience the pavement which had been removed ” (Glenn v. Oakdale Contr. Co., 257 N. Y. 497, 500).
At a point from 150 to 200 feet north of the cut the contractor placed flares and a ‘ ‘ bump ’ ’ sign. In addition, the contractor had posted other signs warning motorists to proceed slowly because men were working. It does not appear, *374 however, that men were at work at the time of the accident although the work of the contract had been under way that day and the State engineer in charge had remained on the job until 5:00 or 5:30 p.m. The driver testified that he had no knowledge or notice of the reconstruction project because he entered upon Route No. 9 at a point south of the location of the large sign in the City of Plattsburgh. This, however, was not true, because there were no side roads leading to the highway between the warning sign and the place where the cut was made. Even if this should be regarded as an attempt by Mr. Seide to convey the belief that he received no warning of a reconstruction project, the fact is, nevertheless, that he could see ahead for distances up to 500 feet and he saw the £ 1 bump ’ ’ sign and the cut across the highway; he so testified. Furthermore, he was “ bound to see what, by the proper use of his senses, he might have seen ” (Casey v. State of New York, 191 Misc. 95, 99, affd. 273 App. Div. 1048; Hicks v. State of New York, 4 N Y 2d 1). The driver acknowledged that the ££ bump ” sign was for the purpose of warning motorists there was a hazard ahead and that he was called upon to exercise caution. The warning signs, therefore, were sufficient and they performed the function intended. The speed of the car was estimated at betwéen 25 and 30 miles per hour by Mr. Seide when he applied the brakes as it approached the cut. It skidded into the depression, and, because of the suddenness of the drop-off and the unevenness therein, he lost control of the car, according to his testimony. He estimated the depression had various depths up to eight inches which were not readily discernible by a motorist because of the presence of water therein. Mrs. Seide testified simply that the speed of the automobile was about 30 miles per hour, that she felt the car drop into a depression and then it swerved to the left and went off the highway. She relied chiefly on her husband’s testimony of the occurrence of the accident to make her case. In addition, the claimants called an engineering expert and in response to a hypothetical question he expressed the opinion that the cut in the highway was not maintained properly and there were insufficient signs warning of the reconstruction work. The fact is, however, that the driver did see the £ £ bump ’ ’ sign and the cut and he did have adequate warning. At best, the engineer’s testimony is merely the expression of an opinion that the condition complained of might cause an accident, however, “ This is insufficient to fasten liability on the State where other causes are equally plausible ” (Boyce Motor Lines v. State of New York. 280 App. Div. 693, 697, affd. 306 N. Y. 801).
*375 A Clinton County Deputy Sheriff arrived at the scene shortly after the happening of the accident and he and Mr. Seide went into a roadside restaurant where they sat at a table, and, there the former obtained from the latter a written account of the accident which Mr. Seide read and signed. The statement signed by Mr. Seide was as follows: “I was going south at about 25 or 30 miles an hour. I put my foot on the brake to slow down for bump and on the wet pavement my car slipped and I tryed [sic] to apply the brakes and hit a pole and went of [sic] the left side of road into the field, the people fell out of car ’ ’.
On July 8 Mr. Seide went to the Sheriff’s office and he then added the following to the statement of two days before: ‘ ‘ at the time of the accident (7/6/53) the bump in the road was not sanded so as to prevent any slipperyness the road was wet and the bump section was furred and not properly sanded ”. Subsequently, and after he had returned to his home in Brooklyn, Mr. Seide filed a State Motor Yehicle Bureau accident report wherein he stated that as he was driving southerly on Route No. 9, iñ the rain, “ suddenly car dropped into a hole in roadway causing car No. 1 to leave roadway and strike a pole. Hole not visible because filled with water and blended with roadway. ’ ’ Time and reflection produced substantial difference's between the first and last accounts of the accident. In the first, the claimant admitted he saw the ‘ ‘ bump ’ ’, but, in attempting to slow the forward motion of the car, the application of the brakes resulted in skidding. The skidding could have been due to an excessive rate of speed or the manner in which the brakes were applied under the conditions then prevailing. Of course, the State is not responsible where an automobile skids on a State highway (Coffey v. State of New York, 276 App. Div. 1049, motion for leave to appeal denied 301 N. Y. 813). In the second and third accounts of the accident, Mr. Seide omitted the references to his attempt to slow the automobile and sought to place the blame upon the bump which he termed a “ hole ” in the last account. The evidence shows, however, that there was no hole, but, there was a hard packed surface which could have been one to two inches in places below the adjoining pavement but this was not hazardous to others who testified they had driven over it safely and with slight inconvenience to themselves. There is no question but that the State must maintain its highways in a reasonably safe condition, however, a “ highway may be said to be reasonably safe when people who exercise ordinary care can and do travel over it safely” (Boyce Motor Lines v. State of New York, 280 App. Div. 693, 696, affd. *376 306 N. Y. 801, supra); the State is not an insurer (Kirchner v. State of New York, 223 App. Div. 543). A reasonable hypothesis is that the brakes were applied with force sufficiently great as to cause the automobile to swerve suddenly from its forward progress and leave the highway. In this case the ‘ ‘ balance of probabilities between causes which entail liability and others which do not is equal enough so that an inference of fact which entails liability is the result of mere speculation” (Tortora v. State of New York, 269 N. Y. 167, 170). The scales are weighted against the claimants by the doubtful credence to be attached to Mr. Seide’s evidence; he is an interested witness (Goldsmith v. Coverly, 75 Hun 48). The highway condition complained of was not a proximate cause of the accident and the State did not fail in its duty to provide a highway that was reasonably safe. This is consistent with the jury verdict in the claimants’ actions against the contractor, referred to hereinafter. (Caloro v. State of New York, 280 App. Div. 854.)
In addition to the claimants, a Mrs. Eose Dickler and Miss Suzanne Dickler, were injured. They were relatives of Mrs. Seide and were passengers in the car. Mrs. Dickler filed a claim against the State, but a claim was not filed on behalf of Suzanne Dickler. Mrs. Dickler’s claim was discontinued at the time of the trial herein which was subsequent to the trial of her negligence action in Supreme Court, Kings County, against the contractor and Julius E. Seide, one of the claimants herein. Suzanne Dickler also sued the same defendants in the same court and her case was tried at the same time. The claimants herein brought suit against the contractor, too, in the same court. All of these cases were tried together and the jury brought in verdicts on December 19, 1956, as follows: (a) in favor of Eose Dickler for $37,000 (later reduced to $22,500) and against Julius Seide, the claimant, herein, and in favor of the contractor; (b) in favor of Suzanne Dickler for $2,400 against Julius Seide and in favor of the contractor; and (c) against the claimants in their actions and in favor of the contractor and the latter obtained a judgment which was “ on the merits ” in all actions, including those on behalf of the passengers as well as the driver.
In the Supreme Court actions by these claimants against the contractor they alleged in their complaint that the latter, in the execution of the contract, had agreed to maintain and protect traffic, but, had failed to do so in that it had excavated a culvert and improperly back-filled and maintained it and this constituted a danger to users of the highway and caused the claimant Julius Seide, to lose control of his automobile with *377 resulting injuries to the claimants and damages to the automobile. The contractor’s answer admitted the existence of the contract, the excavation for the culvert and the back-filling but, denied that it was negligent.
In the light of the exoneration of the contractor, the State upon the trial herein, interposed the affirmative defense .of res judicata. The defense is good and was proved. The issues herein and in the claimants’ Supreme Court actions are the same. The contractor was the active party and the State the passive party, and, since the relationship of indemnitor and indemnitee existed between the two, the rule of Israel v. Wood Dolson Co. (1 N Y 2d 116) applies. There it was held that the fact a complaining party has not had his day in court ‘ ‘ against a particular litigant is not decisive in determining whether the defense of res judicata is applicable. In cases involving the relationship of * * * indemnitor and indemnitee, the liability of more than one party turns on, or is dependent upon, identical issues. In such situations when the complaining party has been given a full opportunity to litigate those issue? against one of the parties, and has been defeated on grounds other than a personal defense, he is not permitted to relitigate the same issue in a new action against the other. The unilateral character of the estoppel in such cases is warranted by the policy of the doctrine of res judicata — that there be an end to litigation” (pp. 119-120).
The claims must be, and are, dismissed.
Let judgment be entered accordingly.