John P. Gualtieri, J.
This claim arises out of a two-car accident which occurred on State Highway Route 26 approximately one and one-quarter miles south of the Village of Vernon Center, resulting in injuries which caused the death of claimant’s intestate. This highway, a 16- to 18-foot two-lane road of macadam construction, runs in a generally northerly and southerly direction.
In July of 1960, the State Department of Public Works undertook the replacement of an old bridge with a modern culvert. In order to avoid interruption of traffic by reason of the construction, the State constructed a temporary detour east of the bridge site having a gravel base 24 to 30 inches deep, the detour being about 200 feet long and wide enough to accommodate cars traveling in opposite directions. The evidence indicates that the gravel in this area contains a clay substance having a reddish tint.
Both to the north and to the south of the detour the State had erected large signs plainly visible to motorists traveling in either direction bearing the words: “Danger — Bridge Construction— Proceed with Caution”. From the construction area northward there is a 6 to 7% ascending grade, the ascent continuing several hundred feet to a sharp curve in the highway where the highway curves to the west.
On October 10,1960, about 3:30 in the afternoon the claimant’s intestate was operating his 1947 Chevrolet automobile in a northerly direction on said highway, with his wife and six-year-old daughter as passengers. This vehicle proceeded through the detour, at 10 to 15 miles per hour, travelled northerly up the upgrade some 350 feet, where it came into collision at the curve with a southbound vehicle operated by one Charles Brown.
Mr. Brown testified that he was traveling at a rate of speed of 15 to 20 miles per hour; that he observed the northbound car operated by the deceased, traveling at about the same speed, suddenly come into his lane; there was a collision between the two vehicles, the Hall car coming into contact with the left front *1095 and side of his car. There was damage along the entire left side of the deceased’s car indicating that after the two vehicles met the entire left side of the Hall car was sideswiped by the Brown vehicle.
Mr. Brown testified that just before the moment of contact he observed that the wheels of the Hall automobile were spinning and that it came toward him on his side of the highway at an angle.
At the time of the accident the pavement was wet. It was undisputed that it had been raining off and on most of the day.
The alleged negligence of the State is predicated upon the fact that vehicles, and particularly heavy trucks using the gravel detour brought mud, clay and dirt from the detour onto the highway particularly when the base of the detour was softened by rain and that the State was negligent in not keeping this highway clear of such debris or warning motorists of the existence of such a dangerous condition.
The nature and extent of the debris was much disputed. Some of the witnesses testified that from the northerly edge of the detour the dirt on the highway was an inch thick tapering off to about one-quarter inch at the scene of the accident. Other witnesses testified that there was dirt on the highway northerly of the detour for only a short distance and that even the reddish tint disappeared within 50 feet.
The court was much impressed with the claimant’s witness, Willis Dorn, a United States postal employee for 37 years, who said that he observed dirt on the highway north of the detour but that any such debris disappeared in a distance of 200 to 300 feet from that point. Here it is essential to bear in mind that the point of collision was 350 feet from the northerly margin of the detour.
The deceased’s widow, the only other eyewitness to the accident besides Mr. Brown, testified that she and her deceased husband had travelled over this road two or three times during the period of construction prior to the date of the accident; in fact they passed over the highway traveling southerly on the morning of the accident.
She said that both she and her husband knew of the construction and knew of the detour.
Unfortunately, Mrs. Hall could throw no light on what precisely caused the vehicle to cross over to the southbound lane into the path of the Brown truck. She said that they were traveling at about 15 miles per hour; that she saw the Brown truck on its own side of the road traveling south; that her attention was momentarily distracted and suddenly there was a crash.
*1096 Under these facts the court is unable to fasten liability upon the State for this unfortunate accident. It is, of course, incumbent upon the State to properly maintain its highways in a reasonably safe condition but all that is required is that it take reasonable precaution to safeguard the motoring public.
The State not only has the duty of maintaining the highway in a safe condition; it has the additional duty of making repairs whenever and wherever such repairs are necessary. When such repairs are made, ordinary traffic procedures are interrupted and a motorist approaching an area of construction or repair knows that in the area of such repairs or construction driving conditions are not normal.
We fail to see in the instant case what more the State could have done in the area of this accident. Large signs warning of the construction were posted in either direction. The accident happened in the daylight when the fact that construction was in progress was open and obvious. Any additional warning signs such as claimant urges should have been posted would give a motorist no more notice or knowledge of the conditions that existed there.
It is urged on behalf of the claimant that the State should have kept a crew constantly clearing the highway of dirt or mud as the wheels of the vehicles using the detour brought it upon the public highway. Such a procedure would be an unreasonable burden to place upon the State in the area of construction particularly in view of our finding that the debris extended only a short distance north of the detour and that there was no such accumulation covering the highway at or near the scene of this accident.
We are forced to hold under the evidence in this case that the claimant has failed to establish actionable negligence against the State. (Boyce Motor Lines v. State of New York, 280 App. Div. 693 [1952], affd. 306 N. Y. 801 [1954]; Seide v. State of New York, 18 Misc 2d 371 [1959].)
Purdy v. State of New York (25 Misc 2d 907 [1960], affd. 12 A D 2d 834 [1961]) strongly urged upon us by claimant’s attorneys involves an entirely different state of facts. There the debris left on the highway was up to seven inches in depth; here if we accept the evidence most favorable to the claimant there was dirt or mud on the highway of not more than one-fourth to one-half inch at the most. In the Purdy case there was no construction going on; the debris had washed away from a slope onto the highway and after notice of the existence of this accumulation the State permitted the condition to continue while the State and town officials argued as to whose responsibility *1097 it was to remove it. Also, in that ease the accident occurred after dark with no warning of the existence of the debris on the highway. Here it was broad daylight. The fact of construction was not only adequately posted but the whole situation was plainly visible and obvious.
The conclusion that the claim must be dismissed is inevitable. We find no basis upon which to fix liability on the State for this accident and the resultant death of the deceased.