ALICE M. MASTERS, RESPONDENT, v. THE CITY OF TROY,
APPELLANT.

*Action against a city for neglect to remove ice from a sidewalk — evidence showing
that other persons slipped on the same sidewalk on the same day, and on three
or four days previously, is admissible — when a discrepancy between the claim
filed by the plaintiff and the proof will not prevent a recovery — duty to keep streets
in repair rests on the city and not on its officers — the rule as to the liability of a
city for injuries sustained by its neglect to have ice removed from its sidewalks,
stated.*

Upon the trial of an action brought to recover damages for an injury sustained by
the plaintiff by slipping on an icy sidewalk on the south side of Broadway, in
the city of Troy, the court, against the objection and exception of the defendant,
permitted a witness to testify that subsequent to the accident, and on the same
afternoon, she slipped on the ice at the same place, and also that she saw another
person slip about the same time at that place; and also permitted another wit-
ness to testify that three or four days previous to the accident he also fell upon
the same sidewalk.

*Held,* that this evidence was competent as it tended to show the actual condition
of the sidewalk and that it was slippery.

*Quinlan* v. *Utica* (74 N. Y., 603); *Pomfrey* v. *Saratoga* (104 id., 469) followed.

The defendant also objected to the proof of the distance between the City Hall
and the place where the accident happened.

*Held,* that, as it was not claimed in this case that the city had actual notice of the
obstruction, it was proper to inform the jury of the situation of the place where
the accident happened, and its relative position to such a public building as the
City Hall, in order to charge the city with constructive notice.

The claim of the plaintiff, filed with the comptroller of the city, stated that she
was injured by falling on the sidewalk on the south side of Broadway, between
Second and Third streets, near the corner of Broadway and Third.  The proof
was that she fell on that sidewalk, about sixty-five feet from that corner.

*Held,* that a claim made by the defendant that the plaintiff should have been
nonsuited by reason of the discrepancy between her claim, as filed, and her
proof on the trial, should not be sustained, as it was not intended that the claimant
should state in the claim the exact spot where the accident happened at the peril
of being defeated in her action in case she makes a mistake of a few feet.

That the court did not err in refusing a request to charge, made by the defendant,
that the duty of inspecting the streets was limited to the "city superintendent;"
that the duty of keeping the streets in good condition rests on the city, and
that it is immaterial whether the city does, or neglects to, discharge this duty
through one officer or another,

That it was not for the plaintiff to show what officer was charged with that duty.

The accident occurred between half-past twelve and one o'clock December twenty
first.  That morning there had been about one-tenth of an inch of snow; on the

fifteenth there had been one-tenth of an inch of snow, hardly any before that; two-tenths on the thirteenth and the same on the tenth. On the tenth, eleventh, thirteenth and fourteenth the thermometer was above freezing at its maximum. The ice was rough and uneven and looked like old ice; in bunches, hard and rough, three or four inches in places. It extended the width of the sidewalk; most all the way around the corner; all around the Warren residence; had been so a week or ten days; Mr. Warren, the owner of the property, could tell nothing as to the condition of the sidewalk at the time of the accident, and his employee, who had been generally directed by him to keep the sidewalks clean, could not say that there was not then ice there.

*Held*, that there was evidence sufficient to justify the jury in finding that there had been an accumulation of ice at this place for several days and that the defendant was chargeable with negligence.

*It seems*, that the rule is that where there has accumulated a mass of rough ice in some one place upon the sidewalk, which has been there for a time long enough to give constructive notice to the city, then the city may be liable, but when the ice on the sidewalk is the result of some rain or snow which has made all the sidewalks slippery, then it cannot be negligence of the city not to remove it. (Per LEARNED, P. J.)

APPEAL by the defendant from a judgment entered herein upon the verdict of a jury rendered at the Rensselaer circuit on the 9th day of June, 1888, in favor of the plaintiff for $2,000 damages and $289.54 costs, and from an order denying the defendant's motion to set aside the verdict, and for a new trial made upon the minutes of the justice presiding at the trial.

*R. A. Parmenter*, for the appellant.

*A. C. Comstock*, for the respondent.

LEARNED, P. J.:

This is an action to recover a compensation for injuries sustained by slipping on an icy sidewalk on the south side of Broadway, in Troy. The defendant's first objection is, that the court permitted a witness to testify that subsequent to the accident, and the same afternoon, she slipped on the ice at the same place, and, also, that she saw another person slip about the same time at that place; also, that another witness was permitted to testify that three or four days previous to the accident he also fell on the same sidewalk.

Now, this evidence was given to show the actual condition of the sidewalk; that it was slippery. Of course, this did not touch the question whether its condition was caused by natural causes or

otherwise. It merely showed or tended to show what the condition in fact was. It was certainly competent to show that the walk was slippery, and the satisfactory proof of that was that persons had slipped upon it. We think that decisions have established the competency of this evidence. (*Quinlan* v. *Utica*, 74 N. Y., 603; *Pomfrey* v. *Saratoga*, 104 N. Y., 469.)

The defendant also objected to proof of the distance between the City Hall and the place where the accident happened; the residence of the city engineer and the way he went to his office. It is not claimed, in this case, that there was actual notice of the obstruction. As to constructive notices, it has often been urged, and with force, that a city like Troy has many miles of sidewalks, and hence a difficulty or impossibility arises as to knowledge by the authorities of the actual condition of all the sidewalks. Hence, in judging of the constructive notice, it seems proper to inform the jury of the situation of the place where the accident happened and of its relative position to such a public building as the City Hall. As to the residence of the city engineer, it proved afterwards that the witness (who testified to his residence and his course of walking) was not engineer at the time of the accident, so that the testimony had no weight on this point whatever.

The next point is that plaintiff should have been nonsuited by reason of a discrepancy between her claim, as filed with the comptroller of the city and her proof on trial. The claim stated that she was injured by falling on the sidewalk, south side of Broadway, between Second and Third streets, near the corner of Broadway and Third. The proof was that she fell on that sidewalk about sixty-five feet from that corner. There is no discrepancy here. It is not intended that the claimant shall state in the claim the exact spot where the accident happened, at the peril of being defeated in his action if he make a mistake of a few feet. Sixty-five feet are less than the front of three ordinary city houses. One who was within the width of three houses of a corner would not be accused of falsehood if he said he was near the corner. The defendants also except to the refusal of the court to charge the first request. On examining the charge, it seems to us that the court had so fully stated the law just as the defendant asked, that the repetition would have been needless.

The next request was that the duty of inspecting the streets was

limited to the "city superintendent." The duty of keeping streets in good condition, whatever that duty be, rests on the city. This action is for the neglect of the city. It is immaterial whether the city does, or neglects, this duty through one officer or another. It was not for the plaintiff to show what officer was charged with the duty, nor was it material that there should be any charge on that point. We see no error in the charge. The remaining question arises on the other alleged grounds of nonsuit, that there is no sufficient evidence of negligence or of notice actual or constructive.

The accident occurred between half-past twelve and one December twenty-first. That morning there had been about one-tenth of an inch of snow, equaling one-hundredth of rain. On the fifteenth there had been one-tenth of an inch of snow, hardly any after that; two-tenths on the thirteenth, and the same on the tenth. On the tenth, eleventh, thirteenth and fourteenth the thermometer was above freezing at its maximum. The ice was rough and uneven, and looked like old ice; in bunches; hard and rough; three or four inches in places. It extended the width of the sidewalk; most all the way around the corner, all around the Warren residence; had been so a week or ten days. Mr. Warren, the owner of the property, usually moved into his house between the tenth and second of December, but could not tell what day he moved in the year of the accident; and could tell nothing as to the condition of the sidewalk. His employees, who had been generally directed by him to keep the sidewalk clean, could not say that there was not ice there in December, 1882. There certainly was evidence to justify the jury in finding that there had been an accumulation of ice at this place for several days. It is not altogether easy to determine what the law is on this subject under recent decisions. But from a comparison of those decisions we think the rule must be that where there has accumulated a mass of rough ice in some one place upon a sidewalk, which has been there for a time long enough to give constructive notice to the city, then the city may be liable; but that when the ice on the sidewalk is the result of some rain or snow which has made all the sidewalks slippery, then it cannot be negligence for the city not to remove it. In that view of the law, this case was one for the jury. The condition of the sidewalk was not one common to all the sidewalks; that is, it was not one of those

unavoidable conditions that occasionally exist in this climate, but it was (or at least there was evidence that it might have been) the result of inattention on the part of the city to the gradual accumulation, at a spot shaded from the sun, of ice formed by alternate melting and freezing. We do not think it necessary to discuss and quote from the recent opinions. They are familiar to the profession; and if there still remains any doubt as to the exact rule of law which has been established, it must be for the higher court to settle it.

Judgment and order affirmed, with costs.

LANDON, J. :

It was old ice, "bunchy," "uneven" and "irregular," and, therefore, the jury might find that it ought to have been attended to, and that, too, before it became old. I concur.

LANDON and INGALLS, JJ., concurred.

Judgment and order affirmed, with costs.