JOHN NELSON, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25864.)

IRENE SMITH, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25865.)

JOSEPH SMITH, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25866.)

HELEN CRAMER, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25867.)

JOHN W. CRAMER, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25868.)

MARGARET LIBERTY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25869.)

LAWRENCE J. LIBERTY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25870.)

WILLIAM P. REINIGER, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25871.)

MARY REINIGER, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25872.)

ARTHUR REINIGER, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25873.)

GEORGE V. COWEN, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 25874.)

Court of Claims, August, 27, 1942.

*Doyle & Heffernan [John F. Doyle and Joseph A. Casey of counsel],* for the claimants.

*John J. Bennett, Jr., Attorney-General [James H. Glavin, Jr., Assistant Attorney-General, of counsel], for the defendant.*

FITZSIMMONS, J.   The foregoing eleven claims, based upon alleged negligence of the State, were tried together.

At approximately 9:45 P. M. on Sunday evening, April 21, 1940, six of the claimants — four of them infants — were injured when the automobile in which they were riding was totally wrecked as it went over the shoulder of a partially barricaded road and somersaulted down a deep embankment, stopping only when it landed forcefully against a telephone pole.   At the time of accident rain and sleet were falling, the night was dark and the road appeared black.

For three days immediately prior to date of accident rain had fallen continuously, causing a washout of a portion of the westerly strip of a three-lane, thirty-foot State highway.   The day before the accident the State highway maintenance patrol dumped a truckload of dirt and gravel on the westerly shoulder of the road. This had been a semi-weekly practice for the previous year, in an effort to build up such road shoulder.

Two barricades, one north and the other south of the depressed portion of the highway, were erected.   They extended across the entire westerly strip and a major part of the center strip.   The easterly strip remained open to traffic.   Lighted lanterns hung from the barricades and bomb flares rested beneath them, as well as the approximate 175 feet between them along the highway.

The car involved was being driven in a northerly direction in Saratoga county on State highway known as U. S. 9; its eleven months' experienced operator, nineteen years of age, was driving a week-old car owned by his step-father; it was in perfect condition, its headlights were on full beam, and its windshield wiper and defroster working perfectly, giving the driver a good view forward; its front seat was occupied by the driver and one of the passengers; its speed was forty miles per hour — reduced to thirty-five miles when close to the southerly barrier.

Traveling north, a driver would approach within 300 to 320 feet of the southerly barricade before even the extreme westerly part of it would come within vision, a situation arising from the fact that at such point, an upgrade in the highway combined with a curve to the east, or driver's right, cut off a direct view.

The whole barricade would come within view of such a driver only as he approached to within 100 feet of it and only then would he be able to observe that the east lane strip was open to traffic. Lights on and underneath the barricade added to the highway's appearance of being entirely closed, since those on the northerly barricade, by reason of the curve, extended farther to the east — or driver's right.

Driving toward the curve in the road, the driver observed a red light off to the right of the road, and a " curve " and " slow " warning sign, all a short distance to · the south of the curve. Approaching the barricade, brakes were applied, whereupon the car skidded to its left; though brakes were then released, the car continued to veer to its left, when brakes were again applied, following which the car traveled to and along the west shoulder of the road and went over the embankment into a ravine below. Testimony offered on claimants' behalf was to the effect that a coating of mud on two wet patches of macadam caused the skidding and sliding of the car.

That there was mud on the wet surface of the road south of the southerly barricade is hardly to be doubted in view of the fact that dirt and gravel had been dumped on the westerly shoulder of the road, in close vicinity to the point of skidding, the day prior to the accident — a day on which it had rained continuously.

At a point on the extreme westerly end of the west shoulder of the road, opposite the southerly barricade, there was a guard rail — and another about 175 feet north of it — but between such points — at which the car went over the embankment — there was no road shoulder protection of any kind.

On the afternoon of the day of the accident, an authorized highway maintenance foreman directed two employees of the highway department to report for duty at the point on the road at the washout to act as watchmen and " to flag traffic; " their hours of duty were from 5:00 P. M. Sunday to 7:30 the following morning. The State, having ascertained, during the course of trial herein, that such employees neglected their assigned tasks by visiting together in a car parked to the westerly side of the road, promptly established such fact. The State contends, however, that such neglect of duty did not constitute negligence in so far as accident herein is concerned, since such employees were assigned solely

to protect, and keep lighted, lanterns and flares on and around barricades. As against such contention — claimants established through testimony of the State employee who directed such employees to report for work and directed them as to their duties for such work, that among other duties they were " to flag traffic."

Flagging of traffic — under the unusual conditions prevailing at the time and place of accident — it appears to us — was indispensable to a full discharge of the duty incumbent upon the State. We have so found.

The State's defense herein is two-fold: (a) that the washed out area was amply protected in accordance with established engineering and highway practice, and that, (b) the operator of the car involved was guilty of contributory negligence, in which his passengers acquiesced.

We have found that the protection afforded by the State at the time and place of accident was insufficient to prevent the occurrence of accident herein.

Concerning possible contributory negligence on the part of the driver, no proof was offered by the State to indicate that the car's speed at time and place of accident was excessive, nor that the driver was inattentive in its operation.

Forty miles per hour, at which the car had been traveling, under ordinary conditions is hardly to be regarded as unsafe. Were the existing conditions such as to make the reduced speed of thirty-five miles per hour excessive when brakes were applied? Up to the time of accident, despite rain and sleet, no trouble had been experienced; travel was light and its little used brakes and tires might well have been depended upon to slow up or stop the car at such speed. The new car was working perfectly, and its young and orderly occupants were on their early evening ride to dine and dance. The passengers were not shown to have had any reason to doubt the driver's ability to safeguard them on their short pleasure-seeking journey, nor were observable conditions such as to impel them to give any warning to the driver.

Upon observing, as he did, a red light to the right of the road, together with commonplace " slow " and " curve " warnings, what duty devolved upon the operator? Assuredly not to bring his car to a stop; rather to take heed of danger ahead — and be prepared, if necessary, to slow down and drive with caution. From the proof before us — the driver was so prepared, as his speed was not excessive. His car doubtless would have been brought to a dead stop or a safe slowdown if not for the encountering of mud on the highway, as to which he had not been warned.

We find that all the occupants of the car were free of contributory negligence.

For damages suffered by the eleven claimants, awards are made by accompanying decisions herein as follows: John Nelson — $75,000.00; Irene Smith — $65,000.00, and Joseph Smith, father of Irene — $3,185.39; Helen Cramer — $3,500.00 and John Cramer, father of Helen — $298.75; Margaret Liberty — $1,500.00 and Lawrence Liberty, father of Margaret — $150.00; George Cowen — $1,571.25; William P. Reiniger — $250.00 and Mary Reiniger, William's mother — $69.75; and Arthur Reiniger, damage to car — $735.00.