LESLIE McMILLEN, Plaintiff, *v.* JAMES VAN EPPS et al.,
Defendants.*

Supreme Court, Monroe County, March 6, 1943.

* Order modified and judgment reversed, without opinion, 266 App. Div. 903.

*Eric P. Smith* for James Van Epps, defendant.

*Leo J. Rice* for plaintiff.

CRIBB, J. The plaintiff, McMillan, who was a passenger in the car owned and driven by defendant, Young, brought this action against defendant Young and the defendant James Van Epps. He seeks damages for injuries received by him as the result of a collision between the Young car and the car owned and operated by defendant Van Epps. The jury rendered a verdict for the plaintiff against both defendants. Van Epps moved to set aside the verdict and dismiss the complaint upon the grounds that there is no evidence in the case upon which the jury could find any negligence on the part of such defendant. Decision on this motion was reserved.

The accident occurred upon a straight open country highway consisting of two strips of concrete, each nine feet wide, with hard shoulders averaging about nine feet in width. Young testified that while traveling at thirty miles per hour easterly on this road he was blinded by the lights of the Van Epps car, and " we got to about, I should judge, three hundred feet, and I put my foot on the brake and pulled sharply to the right, quick, and it all happened at that instant. And what happened after that I couldn't say." Later he testified (which seems more probable) that his car traveled ten to fifteen feet after he applied the brakes before the impact occurred. A review of his testimony clearly demonstrates that prior to the accident he did not know what part of the road he was upon.

There is evidence that the " dip " in the road created a condition whereby at one point the lights, whether on high or low beam, of a car going west will strike the eyes of a driver of a car going east. This accident occurred at this point in the highway. There is no evidence that the lights of the Van Epps car failed in any way to comply with the law. In fact he testified positively that he was driving with the lower beam of the country driving lights on at the time of the accident.

There is no material dispute as to the speed of the cars. Young testified that he was driving thirty miles per hour, and that the Van Epps car " was coming quite fast — I can't judge

how fast,'' while both Van Epps and his wife, who was riding with him, testified that prior to the accident he was driving thirty to thirty-five miles per hour.

Van Epps testified that he was driving westerly on the right-hand strip of the concrete, and that he saw Young's car approaching when it was '' quite aways away '' on its own side of the road; that when about forty-five feet away the Young car suddenly came across the road and headed straight at him. Up to this point, the time when Van Epps first saw the Young car forty-five feet away coming across the road, it is clear that he had been guilty of no negligence. It seems equally clear that if he can be held guilty of any negligence contributing to the accident, it must result from what he did, or failed to do, between the time he saw the Young car heading across the road and the time of the crash. To estimate that time we must visualize these two cars forty-five feet apart approaching each other at a speed of about thirty miles per hour, thereby closing the gap between them at the rate of eighty-eight feet per second if neither car reduced its speed. Van Epps states that he applied his brakes '' the minute he (Young) started crossing that line '' (the center line of the road); that it '' happened all at once; '' that Young '' was on his wrong side of the road one second, and the next second he was headed for me, and I had the brake on trying to avoid him; '' that the cars hit '' head on,'' '' bumper to bumper.'' The most plausible statement, in view of the uncontradicted testimony of Van Epps, made by Young was that when he didn't know where he was on the road he applied his brakes and turned sharply to his right, and that his car went ten or fifteen feet after he applied the brakes and before the crash. Granting that the application of the brakes on both cars slowed them down to fifteen miles an hour, there then remained only about one second to Van Epps in which to determine what he could do to avoid the oncoming car, and to act upon that decision. Now, what did the defendant do when confronted with this emergency? He applied his brakes which obviously would tend to lessen the force of the impact of the collision which he had good reason to believe was imminent and unavoidable. He also says that when he applied the brakes he '' tried to turn '' to his left to avoid the accident. The physical facts reveal that his car headed very slightly, if at all, to the left

before the collision occurred. The photograph, Exhibit 1, clearly reveals the skid marks of the Van Epps car. The skid mark next the center line of the road extended from a point about ten inches north of the center line of the road, and about parallel with it, toward the east a distance of twenty-two feet. When the cars came to rest they were both on the north (Van Epps' side) side of the highway, the left front wheel of the Van Epps car being just on the center line and directly opposite the west end of the above-described skid mark. These facts seem to corroborate the claim of Van Epps that the Young car came clear over on his side of the road, and the testimony of Young that he, not knowing where he was on the road, applied his brakes and turned sharply to his right. Had he continued his course across the road (as testified to by Van Epps), and not turned sharply to his right, he would have run off the road. As it was, his turning to his right brought his car practically head on toward the Van Epps car, and the impact, with the Young car then heading a trifle to its right, could have, and apparently did, push the front of the Van Epps car from the point where the skid mark ended directly south a distance of ten inches to the center line of the road.

It is clear that at the moment of the collision both cars were on the north side of the center line of the highway, that is, on the side where Van Epps was legally driving. The Young car was on the wrong side.

While it is true that generally the question is for the jury as to whether one, when confronted with an emergency not created by his own negligence, used that ordinary care which the careful and prudent person would have exercised under the same or similar circumstances, it is also true that accidents may occur under circumstances where the defendant's liability needs a firmer foundation than mere error of judgment. (See *Stern* v. *International R. Co.,* 220 N. Y. 284.) There is no evidence that Van Epps was a man other than one possessed of those attributes of general intelligence, judgment, alert mental perception and clarity of physical vision with which the ordinary driver is endowed. Confronted with an impending collision and with only a second or two in which to act, he promptly applied his brakes (which would tend to lessen the **force of the impending impact) and " tried," as he says,** to

turn to his left to avoid a collision. In determining whether the collision could have been avoided, it is not a question of what he " tried " or intended to do, but what he *did* do. The skid mark above-discussed (and there was a similar accompanying skid mark made by the right-hand wheels of his car) reveals that his car actually veered to the left, from the straight course it had been following on his own side of the road, only three or four inches, if any, and that his left front wheel at the time of the accident was still ten or more inches to the right of the center line of the road. The plaintiff may argue that Van Epps erred in that he failed to turn to the right, but the only inference that can be drawn from all the facts and circumstances is that there was insufficient time within which Van Epps could have done anything which would have avoided a collision. However, giving the most favorable interpretation to plaintiff's proofs the most that can be charged against Van Epps is that he may have been guilty of an error in judgment when confronted with this emergency.

In *Ward* v. *F. R. A. Operating Corp.* (265 N. Y. 303), the court said: " The defendant was not obliged to exercise the best judgment, and would not be liable for a wrong choice of action if called upon to act quickly in the face of peril." And in *Woloszynowski* v. *N. Y. C. R. R. Co.* (254 N. Y. 206), the court said: " In the light of the wisdom that follows the event, we can see that the outcome might have been better if they had done something else. That is not enough." In the instant case the plaintiff failed to establish any negligence on the part of Van Epps for which he could be held liable in damages. (See *Duffy* v. *Healey,* 258 App. Div. 1072.)

Defendant's motion to set aside the verdict and for a dismissal of the complaint is granted.

Order may be submitted accordingly.