HELEN PETROZAK, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 26318.)

ALICE PETROZAK, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 26319.)

EDWARD TAUBER, as Administrator of the Estate of IRENE TAUBER, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 26705.)

Court of Claims, April 14, 1947.

*Michael A. Gurda, A. J. Weissman* and *George S. Roesch* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Edward R. Murphy* of counsel), for defendant.

LOUNSBERRY, J. The above-captioned three claims arose from the same accident, were tried together, and will be dealt with in a single opinion.

On the afternoon of August 15, 1941, a five-passenger Buick car operated by the claimant, Alice Petrozak, entered State Highway No. 84 from State Highway No. 17 at a place known as Bradley's Corners, and then proceeded in a southerly and then westerly direction through Jones' Corners, toward Slate Hill. In the front seat with the driver was the claimant, Helen Petrozak, and in the back seat was Irene Tauber, whose administrator is a claimant herein. Considerable rain was falling. The car was proceeding at around 25 miles per hour.

At the time, Route 84 consisted of two concrete lanes, of a total width of 18 feet. The State Highway Department had undertaken to widen the pavement by the addition of black-top strips 2 feet in width on either side thereof, commencing at Bradley's Corners. This involved the opening of a trench 2 feet wide and 5 to 6 inches deep along the edge of the existing concrete pavement, which was then to be filled with crushed stone, and finishing layers added. On August 15, 1941, such a trench had been opened along the north side of the highway from Bradley's Corners westerly through Jones' Corners to a point about 200 feet westerly from a driveway leading into the Marcus Roop farm. Up to Jones' Corners the trench had been filled with crushed stone without final surface treatment, but from there on, a distance of about 1,300 feet, it was open, except that about 12 feet immediately confronting the Roop farm driveway had been left unexcavated and at about pavement level, so that the driveway could be used.

From Jones' Corners westerly the road is fairly straight but passes over a rise a short distance before the Roop driveway is reached. As the car came over this rise, the driver, Alice Petrozak, saw a large tractor-trailer type coal truck, operated by one Charles E. Ballway, approaching in the opposite direction, over another rise beyond the Roop driveway. It appeared to her to be partly on her side of the center line, so she swerved to the

right to avoid a possible collision, and as she did so the right wheels of the car dropped into the open trench. She had not seen the trench and did not know just what had happened. She tried to regain the pavement, but was unsuccessful until the car came to the unexcavated area at the driveway, whereupon it swung back onto the pavement, so that its left side came violently into contact with the oncoming truck. The passenger, Irene Tauber, was killed, and both Alice and and Helen Petrozak were seriously injured.

There is much dispute as to the existence and adequacy of warning signs or devices. The State has attempted to show that a large " Construction Ahead " sign was placed at Bradley's Corners at the entrance to Route 84; that barrels were placed along the area of excavation 200 feet apart, standing on the crushed stone fill, where it existed, and just outside the trench where it was not filled; and that a " Men Working " sign was placed about 900 feet easterly from the point of accident.

The claimant and her passenger, Helen Petrozak, saw none of these signs and warnings, and also did not see the trench. A State trooper, who investigated the accident within a very few minutes after it occurred, looked for warnings, and saw no barrels, flares, " Men Working " signs, men actually working, or machinery of any sort. He did see a sign at Jones' Corners, but this was placed to warn traffic entering Route 84 from a side road and would not be seen by one driving along Route 84. An operator of the Marcus Roop farm, who heard the crash and arrived on the scene almost immediately, testified that he was thoroughly familiar with the road and with the construction operations which had been proceeding; that from the farm driveway he could see about 1,000 feet of the roadway; that at no time, and particularly at the time of the accident, did he see any barrels, signs or other warnings. The coroner, who made an investigation at the scene about two hours after the accident, also saw no signs or other warnings.

This testimony is convincing. The State's contrary evidence is unsatisfactory. The foreman of the maintenance crew engaged in the widening project testified on examination before trial (he died before the trial) that the barrels and " Men Working " signs were placed as above described, but it developed that he left the scene at 11:00 o'clock in the morning on the day of the accident and did not return until late in the afternoon. His testimony does not prove that these warning devices which, it will be observed, were of a portable nature, were in place at the time of the accident. The county assistant engineer produced

a large map showing all of the above-mentioned warning signs and barrels neatly in place, but it developed that he first visited the scene on the day of the accident some two hours after it happened, and the map itself was made at a later date. Such map is therefore no evidence as to the existence and location of the warning devices at the actual time of the accident, and the supporting testimony is no better. The most that can be made of it is that warning devices were usually employed in connection with the work and may have been in place in the morning and late in the afternoon of the day of the accident.

We conclude, therefore, on the basis of the evidence submitted, that from Jones' Corners westerly to the scene of the accident, a distance of about 0.3 mile, there were no signs, barrels, or other devices to give warning of the dangerous condition which actually existed. There was some type of sign at Jones' Corners but, as above mentioned, the same was faced toward a side road and would have given no warning to a traveler along Route 84. There probably was in fact a "Construction Ahead" sign about 4 feet by 4 feet in dimension at Bradley's Corners, which was about 2 miles easterly from the scene of the accident, but it was evidently mingled with various advertising signs and highway direction signs, and was not, therefore, very conspicuous, and also was too far distant from the location of actual construction. In any event, we do not regard such a sign as sufficient to give warning of the particular condition which existed. It was a standard sign used for any type of construction situation and, in the lack of any further and more specific warning, afforded a driver no notice of just what to be on guard against. Even if a driver did see the sign, he would then proceed for more than a mile and a half without observing any unusual or dangerous condition, or any active construction work, and, under such circumstances, would scarcely anticipate the sudden appearance of a dangerous open trench along the side of the pavement. We therefore conclude that the State was negligent in that it either failed to give any warning, or else gave entirely inadequate warning of the existence on August 15, 1941, of the dangerous condition above described. *(Taylor* v. *State of New York,* 262 App. Div. 657, affd. 288 N. Y. 542; *Miller* v. *State of New York,* 231 App. Div. 363; *Goldfarb* v. *State of New York,* 178 Misc. 180, affd. 264 App. Div. 976; *Van de Walker* v. *State of New York,* 278 N. Y. 454, revg. 253 App. Div. 226; *Trimble* v. *State of New York,* 263 App. Div. 233; *Wasnick* v. *State of New York,* 183 Misc. 1073; *Nelson* v. *State of New York,* 178 Misc. 875.)

The State argues forcibly that irrespective of the matter of warning signs or devices, the driver, Alice Petrozak, was guilty of negligence. It insists, first, that she should have seen the trench. On a clear day that might well be correct, but at the time of the accident it was raining. Even though the windshield wipers were working, the view of the shoulder would be somewhat impaired. The normal contrast between the light-colored concrete pavement and the dark trench would be obscured by the wetting of the pavement. Unless warned, one might very well fail to notice a trench along the pavement under such conditions.

The State urges, second, that having gotten into the trench, and knowing that the truck was approaching, the driver either should have stopped, or should have made no attempt to turn back onto the pavement until after the truck had passed. This, with the aid of the wisdom of hindsight, is true. But it holds the driver to too high a standard. She was required to do only what a reasonably prudent driver of her class would have done under the same circumstances. She was evidently only an average driver, and she was not at all sure what had happened when the right side of the car suddenly dropped into the trench. She instinctively tried to escape from her predicament, without knowing exactly what it was, and to return to the pavement. At her stated rate of about 25 miles per hour, she traversed the approximately 100 feet from the point where she ran off the pavement to the Roop driveway in about 3 seconds. This is not much time to comprehend a sudden new situation, assay the dangers of various alternative procedures, and reach and carry out a decision as to the safest of these. It is not enough time for an average driver.

Actually, although Mrs. Petrozak probably did not realize it, the truck driver had meanwhile pulled to his own right, so that by the time of impact his right wheels were on the north shoulder of the road. Had it not been for the trench, therefore, she could have returned safely to the pavement as she was trying to do. The vertical side of the trench held the car off the pavement, however, until it reached the unexcavated area confronting the Roop driveway where it was thrown unexpectedly and sharply back onto the pavement. Presumably, she tried to right the car quickly on the wet pavement and the collision followed.

All of this adds up to what proved to be an error of judgment in an emergency by the driver, but liability under such circumstances must be based on a firmer foundation. (*McMillan* v. *Van Epps*, 179 Misc. 851.) As the Court of Appeals said in

*Woloszynowski* v. *New York Central R. R. Co.* (254 N. Y. 206, 209): " At most, however, there·was an error of judgment in an emergency so sudden and immediate that seconds made a difference  *  *  * . They did the thing that suggested itself in the excitement of the moment as appropriate and natural. In the light of the wisdom that followed the event, we can see that the outcome might have been better, if they had done something else. That is not enough  *  *  * ." (In this connection see, also, *Ward* v. *F. R. A. Operating Corp.*, 265 N. Y. 303.)

No negligence can be predicated upon the driver's action in pulling off the pavement. It was narrow and the oncoming truck was big and appeared to her to be partly on her side of the road. It would have been negligence not to pull to the right under such circumstances.

In this view of the case, the State must respond in damages to all three claimants, for certainly, if the driver was not negligent, her passengers were not. This leads to a consideration of the damage suffered by each. The claimant, Alice Petrozak, sustained a comminuted fracture of the right collarbone which has resulted in a permanent deformity, visible whenever she wears any low-necked garment. Extended physical effort results in pain in this area and up the neck. Lacerations received have left permanent scars on both arms and one leg. She was in the hospital five days and confined to her bed at home for another three weeks. She has proved special damages amounting to $157. We assess her total damage at $3,657.

The claimant, Helen Petrozak, suffered a brain concussion, with an area of anesthesia on the forehead resulting from the severance of a nerve. This has resulted in vertigo and headaches which have since continued and may never fully cease. Her doctor describes the condition as chronic traumatic neurasthenia. She also received a sprained ankle and was confined to bed about three weeks. She has proved special damages totaling $142, and we assess her whole damage at $2,642.

Irene Tauber, who died almost immediately as a result of the collision, was seventeen years of age, in good health, a good athlete, satisfactory in scholarship, showed skill in painting, and was of good disposition. Her mother worked and had depended on her heavily for the housework. Her ability and willingness to do this work was obviously of financial benefit to the family, especially since it freed her mother to work outside in order to assist in the higher education of one of the sons. It may reasonably be anticipated that she would have continued to

be a source of help to her parents and family. Her life expectancy, according to the American Experience Table, was 44.19 years. Taking all these factors into consideration, we make an award of damages for her death in the total amount of $10,504.50, which includes funeral expenses.

In reviewing the record we note that decision was reserved as to the admissibility in evidence of the report and decision of the coroner. The State objected strongly on the ground that it was based on hearsay. As it turned out, those portions thereof which were in fact based on hearsay evidence were undisputed or irrelevant, while the relevant portions, concerning the road conditions and the presence of warning signs, were based on the coroner's personal observation. Furthermore, he testified personally to the same effect concerning such conditions and warnings. Hence, at worst, admission of the report would seem harmless error. To settle the issue, however, we now hold that the coroner's report was properly admissible in evidence under either section 367 or section 374-a of the Civil Practice Act, at least insofar as it was based on observations made by the coroner himself in the course of his official duty. (*Trbovich* v. *Burke*, 234 App. Div. 384.)

Decision was also reserved on a motion by the claimants to strike out all testimony of the county assistant engineer with respect to warning signs and devices at the scene of the accident at around 1:30 P.M. and up to 3:30 P.M. This motion is granted, since the record reveals clearly that he was not at the scene at any time on the date of the accident earlier than 3:30 P.M.