ELSE VEIT, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 28278.)
WILLY VEIT, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 28279.)
Court of Claims, March 29, 1948.

*A. E. Gold, James B. Gitlitz* and *Robert Schwab* for claimants.

*Nathaniel L. Goldstein, Attorney-General* (*Arthur W. Mattson* and *Edward R. Murphy* of counsel), for defendant.

LOUNSBERRY, P. J. The above-captioned claims arose out of the same accident, were tried together, and will be similarly treated herein.

On July 21, 1946, the claimants, who are husband and wife, together with their daughter, Irene Veit, about eighteen years of age, were traveling northerly on United States Route 11 from Binghamton to Cortland. At about 12:30 P.M. at a point approxi-

mately four or five miles north of Marathon, New York, and about 300 or 400 feet north of the barn on the Shumacker farm, the 1938 Hudson coach, which was owned and operated by the claimant, Willy Veit, skidded on the wet pavement of the highway (a light rain was falling at the time). The claimant was proceeding at a rate of about thirty miles per hour. The car skidded off the highway into the bank on the east or right side of the road, tipped over and came to rest on its top facing south in the direction in which it had come. The claimants were thrown into the back part of the automobile.

The highway at this point was constructed and maintained by the State of New York, and has been so maintained over a period of many years, it being the main artery of travel between Binghamton and Syracuse. This highway was reconstructed in 1936 and 1937, with two ten-foot concrete lanes, a four-foot gravel shoulder on the east side and a fourteen foot gravel shoulder on the west side. The same dimensions prevailed at the time of the accident.

Between June 1 and June 15, 1946, this highway received a double surface treatment of asphalt emulsion and crushed stone. Double surface treatment such as this is applied in two operations. First, hot asphalt is applied, then a layer of crushed stone rolled in, then a second layer of hot asphalt and crushed stone are applied as in the first instance. The work of resurfacing was completed approximately on June 10, 1946.

Shortly after the work of resurfacing was completed, the emulsion in some areas, of which the scene of the accident was one, came to the surface and acquired "sort of a gummy consistency". The crushed stone, applied at the time of the resurfacing, was thrown off by the action of the wheels of automobiles and trucks. This condition prevailed for a distance of approximately 1,000 feet north of the Shumacker barn. On three separate occasions, between July 5th and July 10th, crushed stone was applied to this area, but not rolled, in an attempt to overcome the condition above mentioned, but the stones were immediately brushed to the sides of the highway by traffic. During warm days this emulsion was also pulled off by the action of the tires of motor vehicles.

No warning signs of any description were placed on the highway at the approach to this particular area although the evidence is that signs had been ordered for this location reading, "Slippery When Wet."

The slippery condition of this particular highway was reported to the office of the Assistant District Engineer of

the New York State Highway Department at Cortland, by a State trooper on or about July 1st, and was also reported to the same office at Cortland on July 16th, five days prior to this accident by the State highway patrolman of this particular area.

The dangerous condition of the highway at the point where this accident occurred was established by uncontradicted evidence of persons who had had accidents at this point prior to July 21, 1946, and by one Sullivan, Assistant District Engineer at Cortland, New York; by the State highway patrolman of this area and by one Handville, a State trooper, as well as by persons residing in the vicinity who had been upon the highway when it was wet and had also witnessed several accidents at this point.

Testimony as to the accidents which occurred subsequent to this incident at this particular place on the State highway was admitted by the court, not for the purpose of showing notice, but for the purpose of establishing the existence of a dangerous condition. (*Quinlan* v. *City of Utica,* 11 Hun 217, affd. 74 N. Y. 603; *Masters* v. *City of Troy,* 50 Hun 485, affd. 123 N. Y. 628; *Taylor* v. *Northern States Power Co.,* 192 Minn. 415; Richardson on Evidence, p. 136; *Laitenberger* v. *State of New York,* 57 N. Y. S. 2d 418, 422.)

It has been universally held by the courts of this State that the State of New York owes a duty to the public to keep its highways in a reasonably safe condition for travel. " A duty rests upon the State to erect and maintain signs or barriers on a state highway as circumstances present reasonably demand." (*Dawley* v. *State of New York,* 186 Misc. 571, 574.)

" The officials acting for it [State] owe the duty to the public that persons traveling the highways shall find them reasonably safe. (*Stern* v. *International R. Co.,* 220 N. Y. 284.) Ordinarily the defendant would not be liable for conditions due solely to weather, but when through originally defective construction, wear or other causes, a highway or sidewalk is rendered more dangerous by action of the elements, the State or municipality may become liable to one injured thereby." (*Sporborg* v. *State of New York,* 226 App. Div. 113, 116; *Walker* v. *Town of Pittsfield,* 198 N. Y. 559; *Saulsbury* v. *Braun,* 223 App. Div. 555, affd. 249 N. Y. 618; *Petrozak* v. *State of New York,* 189 Misc. 809; *Kirchner* v. *State of New York,* 223 App. Div. 543.)

The condition of this highway at the scene of the accident was unquestionably dangerous for the traveling public, particularly when wet. It is well settled that where unusual circumstances render the highway dangerous, it is the duty of the State to at least erect signs warning the public of such dangerous condition. The mere slipperiness of the highway due to weather conditions is not proof of negligence on the part of the State in the absence of any faulty condition or maintenance, which was aggravated by the weather conditions. However, even if there were no evidence of faulty construction of this highway or resurfacing thereof, the existence of a dangerous condition raises a duty on the part of the State to remedy that condition. In the instant case, it is the opinion of the court that the State in the resurfacing of the highway created a dangerous condition because the material did not adhere as anticipated. From the undisputed testimony, the State had ample notice of the dangerous condition existing at the scene of this accident, particularly when the pavement was wet and it was therefore the duty of the State, its agents and employees to at least advise the public of such dangerous condition by the erection of warning signs, and also by the application of such materials as would remedy the condition.

The question of the duty owed the traveling public by the State of New York in maintaining and keeping its highways in a safe condition for travel and the erection and maintenance of warning signs advising the public of the existence of any dangerous condition is too well settled to require the citing of authorities.

The testimony on behalf of the claimants relative to the condition of the highway at the time of the accident, before and after the accident, and the notice of such condition is undisputed by the State. The court is also of the opinion that the claimant, Willy Veit, was driving approximately thirty miles per hour in a careful and prudent manner, and that he has proven beyond reasonable doubt, and by a preponderance of the evidence, that he was not guilty of contributory negligence. Else Veit being a passenger, no negligence can be attributed to her. Therefore, the court is of the opinion that the State of New York, its agents and employees, was guilty of negligence in the care and maintenance of this highway, and that the claimants are entitled to recover.

As a result of the accident, Willy Veit, sustained a fracture of the first lumbar vertebra, as well as brush burns on his

forehead, and was confined to the hospital for approximately three weeks. At first he was placed on a Bradford frame, and, later, on another type of frame for the purpose of immobilizing his spine and head. On or about August 7th, he was placed in a cast in which he remained until October 16th, when a body cast was applied which cast extended from the neck to the pelvis. This latter cast was removed on December 4, 1946, at which time a steel and leather brace was applied, which he wore night and day until the end of February. From then until the last of March, he wore the brace only during the daytime. All the time he was in the hospital and at home he suffered considerable pain and was very uncomfortable. While the doctors agree he has had a complete recovery, he occasionally suffers pain in the region of the fracture.

Else Veit was immediately removed from the scene of the accident on July 21, 1946, to the Binghamton City Hospital. The first examination of the doctors indicated that she had a bruise on the right knee with swelling, abrasions on the left hip, numbness in the left arm and the second and third fingers of her hand. The X-ray pictures showed she had a fracture through the lamina of the fifth cervical vertebra. A felt collar was applied to the neck that immobilized the head, which collar was tightened from time to time. This collar extended from below the chin to the chest. Later a steel brace was applied extending from the forehead to the chest to prevent movement of the neck. Else Veit was in the hospital from July 21st until August 15th at which time she went to her home. She wore the neck brace continuously day and night for two weeks, after which time the brace was worn during the daytime for eight weeks. On the advice of her physician, heat treatments were applied to the injured knee. The testimony of both the claimants' and State's doctors is that Else Veit has had a complete recovery although on occasion suffers pain in her knee and neck, and has some fatigue.

The net earnings of Willy Veit from January 1, 1946, to July 21, 1946, were $3,864.61. The claimant was engaged in the buying and selling of cattle, and after January 1, 1947, was able to do some business during the winter. The latter part of March, 1947, he suffered a heart block which had no connection with the accident. However, after a few weeks he was able to continue his business.

The automobile owned by the claimant Willy Veit at the time of the accident, and which he was driving on the afternoon of

July 21, 1946, was a 1938 Hudson coach, Model 118. As a result of the accident, this automobile was almost completely demolished, and was subsequently sold for $75. The undisputed testimony as to the value of the automobile at the time of the accident was $575 to $600.

Willy Veit spent considerable sums of money for hospitalization, doctors' services, drugs, braces and other services as a result of this accident, and is therefore entitled to recover the sum of $1,416.75 therefor. He is also entitled to recover the sum of $574.39 for hospitalization, services of physicians, braces, drugs and other services for his wife, Else Veit, also the sum of $500 for damages to his 1938 Hudson automobile.

The injuries, which Willy Veit sustained as a result of this accident, caused him severe pain and suffering for several months, and he is entitled to recover therefor the sum of $5,000, the further sum of $3,000 for loss of complete income from July 21, 1946, to December 31, 1946, and the loss of partial income from December 21, 1946, to March 1, 1947, and for the loss of services, comfort and society of his wife, Else Veit, the further sum of $1,000.

The said Else Veit is entitled to recover from the State of New York for injuries sustained as a result of said accident, including pain and suffering, the sum of $4,500.

Findings of fact and conclusions of law may be submitted in accordance with this memorandum within ten days of the filing thereof, otherwise this opinion will be considered the decision.

Let judgment be entered accordingly.