MARY K. HERENDEEN, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28789.)

THOMAS HERENDEEN, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28790.)

MARY R. WEILAND, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28791.)

Court of Claims, January 19, 1949.

*Harry A. Sessions* and *Arthur T. Pammenter* for claimants.

*Nathaniel L. Goldstein, Attorney-General* (*Arthur W. Mattson, Sidney B. Gordon* and *Lewis C. Ryan* of counsel), for defendant.

Lounsberry, P. J. The above claims arise from the alleged negligence of a State trooper in forcing the automobile in which the claimants were riding off the highway and causing it to overturn, resulting in personal injuries to all three of the claimants and damage to the automobile. The claims were tried together and are thus disposed of here.

The testimony is in sharp conflict. We shall consider first the claimants' version of the event as related by Mary K. Herendeen, the driver and owner of the damaged automobile. She testified that on the evening of October 17, 1947, she was proceeding from Rochester to Henderson Harbor, driving her 1947 four-door Pontiac deluxe sedan. Accompanying her and sharing the front seat were her son, Thomas Herendeen, and a friend, Mary Rita Weiland, who are also claimants.

The party stopped in the village of Mexico for something to eat and, leaving the diner at exactly 10:32 P.M., returned to the automobile and proceeded northerly on Route No. 3, with Mrs. Herendeen driving. When they had traveled about two and one-half miles north of Mexico an automobile of the same color as Mrs. Herendeen's and going in the same direction passed them at a speed which the claimants estimated to be about eighty miles per hour. Mrs. Herendeen immediately looked at her speedometer and noted that she was traveling between forty-five and forty-seven miles per hour. The other claimants also took note of the speed of their own car and commented on the high speed of the other.

As the other automobile disappeared around a curve in the road ahead, the claimants became aware that another vehicle, which they subsequently learned was a State police car operated by Trooper John Doyle, was overtaking them. According to Mrs. Herendeen, Trooper Doyle gave no warning of his approach, drove along parallel with her car, very close to its left side, and began to crowd her to the right. The trooper's car then pulled ahead and in front of her car, and to avoid colliding with it she swerved to the right and went into the ditch where her car overturned. This version of the accident was closely corroborated in all important details by the other claimants.

Trooper Doyle testified that he turned right in the village of Mexico onto Route No. 3 from Route 104 and then observed the claimant's car about five car lengths ahead of him. As he followed it, he noted that its speed was a little over fifty-five miles per hour as it left the village, and that subsequently its speed was as high as sixty-five or seventy miles per hour. He insisted that up to the time of the accident the Herendeen automobile was at

no time out of his vision and also that at no time was there another car proceeding in the same direction within his line of vision. He did meet a car going in the opposite direction just before he closed in upon the claimant's car to check its speed.

Trooper Doyle stated that upon approaching the claimant's car he pulled out into the west line of the highway and began to pull up alongside it. When the right front fender of his car was about opposite the left rear fender of claimant's car, he sounded his horn, turned on his flashing police light and, as he pulled alongside, waved his flashlight in the direction of the claimant's automobile and also upon his own hat. At this point, according to the trooper, the claimant's car was traveling at seventy miles per hour and was crowding him toward the left so that he was forced over onto the west shoulder of the highway where he drove for a distance of about 200 feet. He thus pulled over to the left at about the same time that he heard the squeak of tires as the brakes of the claimant's car were applied. He then, according to his version of events, went 200 feet down and across to the east side of the road, stopped, made a half circle to the west, backed up and returned southerly to the scene of the accident. On cross-examination, he stated that he pulled into the east lane of the highway ahead of the claimant's car about seventy-five feet north of the scene of the accident. He admitted that during the time the two cars were proceeding side by side down the road his car was within a few inches of the claimant's car.

Upon the whole, the claimants' account is the more credible. There are a number of discrepancies in the trooper's version, the most notable of which is brought to light by examination of State's Exhibit B — a photograph of the tire marks on the pavement made by the claimant's automobile when she applied her brakes. They establish that her car was definitely within the east lane of the highway when the brakes were applied; that her car gradually veered to the right, and left the pavement about seventy-five feet north of the point where the tire marks first show. Thus, the State's own exhibit discredits the trooper's statement that the claimants forced his car to the left and off the highway to the west.

Concluding as we do that the claimants' account of the accident is substantially correct, we are brought to the further conclusion that the conduct of the trooper constituted negligence and that such negligence was the cause of the ensuing accident. By his own admission, he operated his car at a high speed alongside and very close to claimant's car, so close that the slightest

variation in the direction of either car might well have resulted in a collision. By his own admission, he made no use of the siren on his car to advise the claimants of his approach, and the claimants insist that he gave no other signal. He operated his car beside the claimant's car at a time when both were nearing a curve to the right, around which visibility was not good, thus running the risk of collision with any vehicle which happened to be approaching from the opposite direction. Finally, by his own testimony, he evidently did swerve in front of the claimant's car and, while he endeavors to make it appear that he did so after the claimant's car had left the highway, we are of the opinion that he actually cut sharply in front of it, causing the claimant's car to go off the road entirely.

While we do not specifically so decide, the matter being one of speculation, the claimant's theory as to the sequence of events leading up to the accident seems very plausible. It seems very likely that the trooper did sight a speeding car, pursued it, lost sight of it, and next found himself pursuing instead the claimant's car, which was very similar in appearance.

The weight of the competent evidence satisfies us that the conduct of the driver, Mary K. Herendeen, did not constitute contributory negligence. She testified that the car was in good condition and that she was traveling at a lawful and reasonable rate of speed on her own side of the road. Upon discovering the police car alongside her and extremely close, and having no notion of its character or intentions, she naturally applied her brakes and pulled toward the right. When the car cut sharply in front of her, she was justified in supposing that a collision would result unless she turned sharply to the right, which she did. It might be possible to prove on the basis of exhaustive tests and measurements that she need not wholly have left the road, but in an emergency there is no time to make such tests and measurements. Mrs. Herendeen " was required to do only what a reasonably prudent driver of her class would have done under the same circumstances." (*Petrozak* v. *State of New York*, 189 Misc. 809, 814.) We find that the claimant's conduct was normal and natural under the circumstances. We also find that the two passengers were in no way guilty of contributory negligence.

As a result of the accident, the claimant, Mary K. Herendeen, suffered personal injuries consisting principally of a longitudinal fracture of the left collarbone and bruises on her back and left hip. She had very considerable pain and suffering, substantial medical expense and loss of earnings for seventeen weeks. The car was extensively damaged.

The claimant, Thomas Herendeen, suffered a bruised chest, had some medical expense and lost two weeks' earnings.

The claimant, Mary Rita Weiland, sustained a transverse fracture of the right clavicle, which is permanently displaced, and contusions. She, too, had substantial medical expense and loss of earnings for fifteen weeks.

The claimants are given the following awards: Mary K. Herendeen for pain and suffering $4,500, medical expense, including hospital $743.36, loss of earnings $775.20, damage to automobile $591.50, making a total of $6,610.06; Thomas Herendeen, pain and suffering $500, medical expense $74, loss of earnings $114, making a total of $688; Mary Rita Weiland, pain, suffering and permanent disfigurement $3,000, medical expense $275, loss of earnings $540, making a total of $3,815.

Findings of fact and conclusions of law in accordance with this opinion may be filed within fifteen days from the date hereof, otherwise this memorandum will be considered the decision.

Judgment may be entered accordingly.