GRACE FOLEY, as Administratrix of the Estate of JOHN F. FOLEY, Deceased, Respondent, *v.* STATE OF NEW YORK, Appellant. (Claim No. 33040.)

Third Department, March 15, 1962.

*Louis J. Lefkowitz, Attorney-General* (*Henderson G. Riggs* of counsel), for appellant.

*William L. Shumate* and *Oliver J. Harper* for respondent.

*Per Curiam.* On May 31, 1954 decedent John F. Foley, driving his car south on Route 303 near West Nyack went off the road at a curve and was killed. An award has been made to his administratrix in the Court of Claims based on the State's negligence.

The road was constructed in 1932 with a width of 20 feet and in 1950 was widened to 24 feet. The curve at which the accident happened was laid out in the construction plans on a 6-degree angle; and these plans, together with the photographic sights of the curve as it existed at the time of the accident suggest that the curve is of a type that would be found in countless places and in common use in this State and elsewhere.

There seems no clear reason why a driver traveling on an old-type macadam road, and exercising reasonable care would not be expected to negotiate a 6-degree curve, especially if he knew of its existence or had adequate warning.

There were, however, according to claimant's proof, variations in the angle of the curve and in the rate of banking which, it is argued, contributed to the decedent's going off the road. According to claimant's proof, instead of a constant 6-degree curve, the curve varied from approximately 5 degrees to 7 degrees and the rate of banking from ½ inch to ⅝ inch per foot.

This variation in degree and differential in banking seem to have been deemed by the Court of Claims significant causative factors in the occurrence of the accident. The court, on the assumption that the claimant's engineering proof in this respect was entirely accurate, stated in its opinion that this evidence "established variations in the degree of curvature which were not acceptable as good engineering practice." Commenting on the State's proof, the court said that it "acknowledged the variations but differed with the claimant's testimony only in the degree of variations as above mentioned." (21 Misc 2d 1012, 1014, 1015.)

From this the court concluded that "Regardless of the degree of variation to maintain a curve in such a condition was not good engineering practice." This means, as we read it, that any variation in the actual angle of the curve on the ground would be treated by the court as not good engineering practice. It is reasonable to suppose that there are small variations from the ideal arc in any road built on a curve and that the possibility of perfection implicit in the court's opinion does not exist. It is difficult to understand how these small variations suggested by claimant had any practical effect on the control of decedent's car.

Moreover, there is opinion evidence in the record by an engineer, a specialist in highway safety and traffic and a professor of transportation at Cornell, that the curve in question, accepting the variations in curve and banking as testified to by a State's witness, differing only in minute details and hence substantially similar to claimant's proof, was "adequate and safe" both in "design and construction" for the time it was laid out.

Accepting the claimant's engineer's data in one part of his testimony, this witness testified that at the approximate point the car left the road (station 3 plus 00), a safe speed would be 51 miles an hour. As to his own opinion generally of the safety of the road at this curve, this expert, on cross-examination by claimant as to his "direct observation", testified "I was influenced by my observations in regard to curvature, superelevation, pavement surface, and type of road."

Two " ball bank indicator tests " were made by the State to check the safety of the curve after the accident. Both indicated the curve could be driven with comfort at or near 50 miles an hour. These tests, which are shown in the record to be standard tests to determine the actual speed at which a curve can be negotiated in comfort and safety demonstrated that this curve could be thus driven at an average of 50 miles an hour. The tests are made by observing the effect on an instrument while moving around the curve in a vehicle.

The approach to this curve in the direction in which decedent was driving, gave adequate warning of its existence. At about 675 to 700 feet in advance of the point where the car left the highway, there was a reflectorized curve sign. Somewhat nearer was a smaller curve sign, and beyond this was a large sign, six by nine feet which contained in large letters the words " Danger Construction ".

Moreover, the highway was amply marked with clearly visible white paint which followed the curve to the left. We are of opinion that the evidence does not fairly sustain claimant's contention that the State's negligence in the design or maintenance of the curve or its approach played any effective part in the accident.

At the point where the car went off the road a portion of the guardrail had been removed by the State and there had been some fill placed alongside of the embankment of the road in construction of a connection with the Thruway. It was over this material that the decedent's car actually proceeded until, reaching the end of the fill it ran into trees.

That this possible sight deception was a cause of the accident is not suggested in the opinion of the Court of Claims, which attributes the State's liability entirely to the conditions on the curve itself. But in the findings submitted by the claimant and found by the court this additional ground of State liability is adopted: that the State was negligent in creating or permitting " a dangerous optical illusion for the South-bound motorist, causing him to be deceived by his senses into concluding that the roadway of Route 303 continued in a straight line as it proceeded downhill, whereas in fact it curved sharply to the East, or left."

We are of opinion that no negligence by the State may here be predicated on this theory. The State need not guard against every possibility that a driver may think that a road goes in a different direction onto a construction area. It had the right to take reasonable steps to construct additional facilities off the highway. This area was not only off the highway; its surface

was rough material; there was a six by nine feet sign stating "Danger Construction" as a driver approached this area. To have access to the construction site guardrails necessarily had to come down temporarily. A reasonably alert driver warned of the construction and going at a moderate rate of speed should have been aware of this situation, and not run onto and then off of the end of the construction site.

Moreover, we are of opinion that excessive speed played a significant part in the occurrence of this accident. When the decedent's car after leaving the highway had run over the construction area to its end, it struck trees 35 feet from the end of the construction surface and left scars on the trees 10 or 15 feet above their base, which would be approximately the height of the filled-in material on which it had been moving. The 35 feet from the end of the material to the trees was, therefore, negotiated by the vehicle in the air 10 to 15 feet above the ground. Moreover, the top of the car was sheared off and catapulted some 30 feet south of the trees, where it stopped.

On the state of this record, the attribution of the occurrence of this accident to the State's negligence is left to the merest inference. It has been said by this court that to predicate a liability, "the inferences of negligence and proximate cause must be the only ones that can fairly and reasonably be deduced from the facts." (*Boyce Motor Lines* v. *State of New York,* 280 App. Div. 693, 696, affd. 306 N. Y. 801; *Maislin Bros. Transp.* v. *State of New York,* 15 A D 2d 853.)

The judgment should be reversed on the law and the facts and the claim dismissed, without costs.

HERLIHY, J. (dissenting). I agree with the majority that the State was not negligent in regard to the design of the highway at the place where the accident occurred.

I predicate negligence on the part of the State on the following finding of the Court of Claims made at the request of the claimant: "That the State of New York was negligent in creating and/or permitting (by conjunction of the intersection of the unpaved Interchange grade with the Westerly edge of Route 303 precisely at the apex of the curve, the absence of guide posts at the same point, the absence of lights, flares, or other warnings of the said gap and intersection), a dangerous optical illusion for the South-bound motorist, causing him to be deceived by his senses into concluding that the roadway of Route 303 continued in a straight line as it proceeded downhill, whereas in fact it curved sharply to the East, or left."

In my opinion the examination of the photographs and the record clearly establishes negligence on the part of the State.

The removal of the guardrails and the failure to have signs or other warning created a dangerous illusion.

The record sustains the following facts and findings. At the crest of the hill before starting downgrade, the direction in which the decedent was proceeding, there were two signs designating a curve and a large sign advising of " Danger Construction ". The decedent starting downgrade, with the headlights of his automobile illuminated, would, because of the degree and sharpness of the curve to the left, be directed at the opening between the guardrails. In a split second decision the decedent could and undoubtedly did make the assumption that the road went between the guardrails, there being no signs, lights, barrier or any other type of warning to advise to the contrary. The sign at the crest of the hill relating to construction would only lead to confusion as the decedent might properly have assumed, when he saw the opening between the guardrails, that this was the road he was to travel. Under the circumstances of this case, there was a positive duty on the part of the State or its contractor to have posted necessary and adequate warning signs. The removal of a portion of the guardrails created a deceptive condition, more like a trap, and the failure to so warn the decedent constituted negligence which was the proximate cause of the accident.

The signs at the crest of the hill were entirely inadequate to warn of the existing dangerous condition. (*Petrozak* v. *State of New York,* 189 Misc. 809–813, 815; *Wolf* v. *State of New York,* 122 Misc. 381, affd. 210 App. Div. 827; *Ross* v. *State of New York,* 265 N. Y. 632.)

The opinion of the Court of Claims, in part, was premised on a lack of adequate warning and this court should not disturb that finding of negligence on the part of the State.

The weight of the probative evidence, as found by the Court of Claims, establishes that the State failed in its duty to give the decedent adequate and timely warning of a dangerous situation which he was approaching and " where lurked uncommon danger ". (*Canepa* v. *State of New York,* 306 N. Y. 272, 277.) The highway " was extraordinarily dangerous at the place of the accident ". (*Van de Walker* v. *State of New York,* 278 N. Y. 454, 456.) The negligence of the State was established, not by inference, but by a preponderance of the evidence.

The majority opinion would seem to impute negligence to the decedent on the basis of excessive speed as a result of markings on some trees struck by the automobile. There were no speed limitation signs as the decedent approached the hill and started down, which concededly gave him the prima facie

right to travel 50 miles per hour, the lawful rate of speed in this State. The State substantiated this fact by offering evidence that the lawful and safe speed at the place where the automobile left the road was 50 miles per hour. When he mistook the road at this speed, there was obviously little or no opportunity to brake the car and the fact that the automobile after traveling over the dirt fill catapulted through the air a distance of 10 to 15 feet before striking the trees is no basis for the finding of contributory negligence. As to this facet of the case the weight of evidence amply sustains the finding of the Court of Claims and there is no fair basis inferentially to support a finding of contributory negligence by this court.

This being a death case, the plaintiff is not held to the same degree of proof as in the case of an injured litigant. (*Noseworthy* v. *City of New York,* 298 N. Y. 76, 78, 79.)

In my opinion, the finding by the Court of Claims that the State was negligent and that the decedent was free from contributory negligence was amply justified from the record in this case, and I vote to affirm.

BERGAN, P. J., COON, GIBSON and REYNOLDS, JJ., concur in *Per Curiam* opinion; HERLIHY, J., dissents in an opinion and votes to affirm.

Judgment reversed on the law and the facts and the claim dismissed, without costs.